IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2000 Session

## MARION COUNTY BOARD OF EDUCATION
## v. MARION COUNTY EDUCATION ASSOCIATION

**Appeal from the Chancery Court for Marion County**
**No. 6392      Jeffery Stewart, Chancellor**

---

**No. M1999-00213-COA-R3-CV - Filed August 7, 2001**

---

This is an appeal from a declaratory judgment action on behalf of the Marion County School Board seeking a determination as to whether or not the decision by the director of schools to transfer a principal to a teaching position was subject to binding arbitration under a collective bargaining agreement in effect between the school board and the Marion County Education Association. A cross-claim was filed by the Association requesting an injunction to force the Board to arbitration, and both parties filed motions for summary judgment. The trial court granted the Association's motion for summary judgment and mandated the Board to go to final and binding arbitration under the agreement. We reverse the decision of the trial court and hold that the statutory authority of the director of schools to hire and select principals may not be limited by a collective bargaining agreement and that such an agreement cannot authorize an arbitrator to determine who will be principal at a particular school.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J. joined.

William Henry Haile, Nashville, Tennessee, for the appellant, Marion County Board of Education.

Richard Lee Colbert, Nashville, Tennessee, for the appellee, Marion County Education Association.

### OPINION

Defendant Don Stewart was a tenured economics teacher when he was appointed principal of Jasper Elementary School by the Plaintiff Board of Education (the "Board") in 1997. Mr. Stewart had begun his second year as principal when Paul Turney was appointed director of Marion County Schools in September 1998. Mr. Turney's appointment was made pursuant to the Education Improvement Act, Tenn. Code Ann. § 49-5-301(d), which eliminated popularly elected

superintendents.[1]

In March 1999, Mr. Turney informed Mr. Stewart that he would not be rehired as principal. Instead, Mr. Stewart was assigned for the 1999-2000 school year to return to teach economics at Marion County High School where he worked prior to his principalship. Mr. Turney then appointed someone else as principal. The record provides no reason for the transfer.

Mr. Stewart and Defendant Marion County Education Association (the "Association"),[2] filed a formal grievance under the bargaining agreement between the Board of Education and the Association, seeking reinstatement and claiming that the Board of Education violated provisions of the collective bargaining agreement.

The School Board denied the grievance at each step. The Association finally submitted the matter to the American Arbitration Association, claiming provisions of the collective bargaining agreement were violated in the transfer of Mr. Stewart and that binding arbitration was contemplated by the agreement.

The Board responded by commencing this declaratory judgment action and seeking an order enjoining the arbitration. It argued that the decision to transfer Mr. Stewart to a teaching position was not subject to binding arbitration under the collective bargaining agreement. The Association and Mr. Stewart asserted a counterclaim against the Board, alleging that the Board's refusal to arbitrate violated the collective bargaining agreement and Tenn. Code Ann. § 49-5-609(a) and sought an order requiring the Board to proceed with arbitration.[3]

Both parties filed motions for summary judgment. After hearing oral arguments, the trial court granted Mr. Stewart and the Association's motion for summary judgment, finding that the decision not to renew Mr. Stewart's contract as principal was subject to arbitration under the collective bargaining agreement and ordering arbitration to proceed. The Board then commenced this appeal and moved for a stay of arbitration pending appeal, which was denied. The Board unsuccessfully renewed the motion for a stay in this court.

The arbitrator found that a number of the provisions of the collective bargaining agreement

---

[1]Upon enactment of the Education Improvement Act, local legislative bodies were given the option to delay implementation of appointment of the director of schools in transitioning from an elected school superintendent. Tenn. Code Ann. §§ 49-2-203(a)(15)(B) and 49-2-301(c). *See also County of Shelby v. McWherter*, 936 S.W.2d 923 (Tenn. Ct. App. 1996). Marion County exercised that option, and the change was effective with the beginning of Mr. Turney's term in September of 1998.

[2]The Association is the recognized professional employees' organization representing the certified employees of the Marion County school system.

[3]Tenn. Code Ann. § 49-5-609(a)(8) states that it is unlawful for a Board of Education or its designated representative to "[r]efuse to in good faith mediate, arbitrate and/or participate in fact-finding efforts pursuant to this part."

had been violated by Mr. Turney and the Board and ordered that Mr. Stewart "be reinstated as principal at Jasper Elementary School, made whole as to wages and back wages, insurance, retirement, etc." Moreover, the arbitrator found that "the Director of Schools did not practice procedures as outlined in the contract as to this grievance with regard to evaluations, records, personnel file and notification of deficiencies. In the future cases the Marion County Board of Education should comply with the notice requirements and the due process provisions of this contract."[4] In response to the arbitration outcome, the Board passed a resolution to conditionally reinstate Mr. Stewart as principal pending the conclusion of this cause.

## I.

A trial court's grant of a motion for summary judgment presents a question of law that we review *de novo* without a presumption of correctness. *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001) and *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Since the material facts in this case are undisputed, our review focuses on the interpretation and application of various statutes. Thus, we are presented with a pure question of law. Our review is *de novo* on the record of the proceedings below, but there is no presumption of correctness as to the trial court's ruling. *Billington v. Crowder*, 553 S.W.2d 590, 595 (Tenn. Ct. App. 1977); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998) ("Construction of a statute is a question of law which we review *de novo*, with no presumption of correctness.").

## II.

The primary issue in this case is whether the director's decision to transfer Mr. Stewart from a position as principal to a teacher position was subject to arbitration under the collective bargaining agreement between the Board of Education and the Association. Determination of that issue requires examination of generally-applicable state law provisions regarding authority for personnel decisions, the lawful scope of a locally negotiated agreement, and the terms of the agreement at issue herein.

### A. State Law On Personnel Decisions

The Education Improvement Act of 1992 vested the director of schools, or superintendent,[5] with the power to employ, transfer and discharge employees of the school system.[6] The statute

---

[4]Both parties filed motions asking this court to consider the arbitration decision as a post-judgment fact pursuant to Tenn. R. App. P. 14. Those motions are granted. The merits of that decision are not, however, before this court.

[5]Although the EIA abolished the office of superintendent of public instruction, the newly created director of schools may be referred to as "superintendent." Tenn. Code Ann. § 49-2-301(d). The education statutes use the terms interchangeably, and references to superintendent are deemed references to the director of schools. Tenn. Code Ann. § 49-2-203(a)(15)(A).

[6]Prior to the EIA, such duties lay with the Board, the superintendent, or a combination, depending on the type of employee and the action involved.

provides that it is the duty of the Board of Education to assign to the director the duty:

> Within the approved budget and consistent with existing state laws, board policies and locally negotiated agreements covering licensed personnel, to employ, transfer, suspend, non-renew and dismiss all personnel, licensed or otherwise, except as provided in § 49-2-203(a)(1) [requiring grants of tenure be approved by the Board] and in chapter 5, part 5 of this title [protections and discipline of tenured teachers]. Nothing in this subdivision shall be construed to alter, diminish, or supersede the Education Professional Negotiations Act, compiled in chapter 5, part 6 of this title.

Tenn. Code Ann. § 49-2-301(f)(1)(EE).[7]

Additionally, and more specifically, Tenn. Code Ann. § 49-2-303(a)(1) grants the superintendent the exclusive power and duty to select, contract with and hold accountable all principals. Tenn. Code Ann. § 49-2-303(a)(1) states:

> Each local superintendent shall employ principals for the public schools. The employment contract with each principal shall be in writing, shall not exceed the contract term of the current superintendent,[8] and may be renewed. The contract shall specify duties other than those prescribed by statute and shall include performance standards and require periodic written evaluations by the superintendent to be conducted in the manner and frequency that the superintendent determines proper. Reasons for the non-renewal of a contract may include, but are not limited to, inadequate performance as determined by the evaluations. A principal who has tenure as a teacher shall retain all rights of such status, expressly including those specified in § 49-5-510.[9]

---

[7] Amendments after the Education Improvement Act of 1992 added the additional language regarding "existing state laws, board policies and locally negotiated agreements." 1998 Tenn. Pub. Acts, ch. 826.

[8] A board may employ a director of schools under a written contract of up to four (4) years duration, which may be renewed. Tenn. Code Ann. § 49-2-203(a)(15)(A).

[9] Tenn. Code Ann. § 49-5-510 is part of the Teacher Tenure Act, §§ 49-5-501 - 515. "[T]he basic purpose of the Teacher Tenure Act . . . is to afford a measure of job security to those educators who have attained tenure status. The General Assembly recognized that the efficient administration of the local educational systems of this state requires stability of programs and trained personnel." *Ryan v. Anderson*, 481 S.W.2d 371, 374 (Tenn. 1972) (citing *State v. Yoakum*, 201 Tenn. 180, 297 S.W.2d 635 (1956)). Tenn. Code Ann. § 49-5-501(11)(A)(1996) defines "tenure" as the "statutory requirements, conditions, relations and provisions in this part, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the Board." A teacher who has been granted permanent tenure is entitled to certain procedural safeguards, including charges, notice, hearings, and *de novo* judicial review before he or she can be dismissed or suspended. Tenn. Code Ann. § 49-5-511 - 513.

The section's reference to teacher tenure rights reflects the well-settled principle that a principal has no tenure in that position.[10] Tenn. Code Ann. § 49-5-501(11)(A); *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d 527, 530 (Tenn. 1978). Tenn. Code Ann. § 49-2-303(a)(1) clearly dispels any expectation of tenure in the position of principal, making retention in such position subject to contracts which, by statute, cannot exceed four years. Reassignment of a principal to a position with only teaching duties has been held to be a "transfer within the system," as that term is used in Tenn. Code Ann. § 49-5-510. *Pullum v. Smallridge*, 652 S.W.2d 338, 340-41 (Tenn. 1983); *White v. Banks,* 614 S.W.2d 331, 334 (Tenn. 1981); *Warren v. Polk County Bd. of Educ.*, 613 S.W.2d 222, 225-26 (Tenn. 1981); *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d at 533-34.

That statute provides:

> The superintendent, when necessary to the efficient operation of the school system, may transfer a teacher from one location to another within the school system, or from one type of work to another for which the teacher is qualified and licensed; provided, that transfers shall be acted upon in accordance with board policy and any locally negotiated agreement.

Tenn. Code Ann. § 49-5-510.

This provision authorizes a superintendent to transfer a tenured teacher when the transfer is for the efficient operation of the school system. Our courts have interpreted that statute as giving superintendents (and boards when board approval was required for transfer) wide discretion, and courts will generally not interfere in such a management decision so long as the transfer was not arbitrary and capricious or actuated by political or other improper motives. *Pullum v. Smallridge*, 652 S.W.2d at 340; *McKenna*, 574 S.W.2d at 527; *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974); *Gaylon v. Collins*, No. 03A01-9711-CH-00513, 1998 WL 331300 at *7 (Tenn. Ct. App. Jun. 24, 1998) (*perm. app. denied* Nov. 2, 1998). Further, the courts have presumed " that the actions of a board or superintendent are not arbitrary and capricious, but are reasonable and fair unless there is clear evidence to the contrary." *Mitchell*, 510 S.W.2d at 898 (citing *Blair v. Mayo*, 224 Tenn. 108, 450 S.W.2d 582(1970)).

### B. Locally Negotiated Agreements

As quoted above, some of the relevant statutes now include limitations on superintendent discretion based upon compliance with locally negotiated agreements covering licensed personnel. A 1998 enactment added the words "and consistent with existing state laws, board policies, and locally negotiated agreements covering licensed personnel" to Tenn. Code Ann. § 49-2-

---

[10]Marion County has a private act which allows principals to gain tenure in position. There is some question whether that act remains valid due to its apparent conflict with the EIA. *See Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, No. E2000-01019-COA-R3-CV, 2001 WL 87472 *6 (Tenn. Ct. App. Feb. 2, 2001) (no Tenn. R. App. P. 11 application filed). That issue is not before us.

301(f)(1)(EE) regarding the superintendent's authority to employ, transfer, suspend, non-renew and dismiss all employees. 1998 Tenn. Pub. Acts, ch. 826. In addition, Tenn. Code Ann. § 49-5-510 requires that the transfer of a tenured teacher be made "in accordance with any locally negotiated agreement." *Id.*

The locally negotiated agreements referred to in these statutes are those adopted pursuant to Tenn. Code Ann. § 49-5-601 *et. seq.*, the Education Professional Negotiations Act. The Act authorizes recognition of a professional employees' organization as the exclusive representative of all professional employees of a board of education for the purpose of negotiating with the board; negotiation on specified conditions of employment; and the preparation and execution of a memorandum of understanding reflecting agreements reached in the negotiation. Tenn. Code Ann. §§ 49-5-605, -606, -611, and -612.

It is clear, however, that the legislature did not intend, by adoption of the Negotiations Act, to alter the assignment of duties made elsewhere in statutes pertaining to local administration of schools. Tenn. Code Ann. § 49-5-604 specifically expresses the legislative intent in this regard:

> Those rights and responsibilities of boards of education, superintendents and professional employees as contained in this title are not statutorily modified or repealed by this part.

In addition, the legislature has limited the scope of negotiations and the subjects which may be covered in an agreement between a board of education and the professional association negotiating on behalf of the professional employees. In particular, the legislature has stated:

> The board of education and the recognized professional employees' organization shall negotiate in good faith the following conditions of employment:
>
> (1) salaries or wages;
> (2) grievance procedures;
> (3) insurance;
> (4) fringe benefits;
> (5) working conditions;
> (6) leave;
> (7) student discipline procedures; and
> (8) payroll deductions.

Tenn. Code Ann. § 49-5-611(a). The statute further provides that "nothing shall prohibit the parties from agreeing to discuss other terms and conditions of employment in service, but it is not bad faith, as set forth in this part, to refuse to negotiate on any other terms and conditions." Tenn. Code Ann. § 49-5-611(b).

In addition to limiting the scope of negotiations, the legislature has also limited the scope of

any agreement resulting from the negotiations.

> The scope of a memorandum of agreement shall extend to all matters negotiated between the board of education and the professional employees' organization; provided, that the scope of such agreement shall not include proposals contrary to:
> (1) Federal or state law or applicable municipal charter;
> (2) Professional employee rights defined in this part; and
> (3) Board of education rights contained in this title.[11]

Tenn. Code Ann. § 49-5-612(a).

In addition, boards and associations entering into agreements regarding the conditions of employment for professional employees of the board are specifically authorized to include in such agreement "procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application or violation of such agreement." Tenn. Code Ann. § 49-5-612(c).

### C. The Agreement

The relevant provisions of the agreement between the Marion County Education Association and the Marion County Board of Education include, first, the arbitration provision. In essence, that provision allows the Association to submit to final and binding arbitration any grievance filed by an employee which is not resolved to the satisfaction of the grievant or the Association. While the provision gives the arbitrator the authority to award reinstatement, financial reimbursement, damages and other remedies, it specifically states the arbitrator has no power to rule on matters of law.

The agreement defines grievance as "any claim by a teacher or the Association that there has been a violation, misinterpretation, or misapplication of the terms of this agreement; a violation of the right of the teacher or the Association to fair treatment; or a violation, misinterpretation, or misapplication of any established written policy or practice of the Board."

Mr. Stewart's grievance form described his grievance as:

Reduction in rank with possible loss of compensation and professional advantage,[12] coupled with improper use of personnel file, no evaluations and multiple contract

---

[11]Although the statute speaks of rights of a board of education, the Education Professional Negotiations Act cannot be construed to modify those powers that were later transferred to the director of schools from the board by the Education Improvement Act.

[12]The grievance used these terms because they are used in the agreement as triggering requirements for certain procedures. Removal of a principal from his or her supervisory duties and reassignment to a teaching position, even when accompanied by a reduction of salary is a transfer within the system, not a demotion, suspension, or removal from office. *McKenna*, 574 S.W.2d at 530. On appeal, the Association and Mr. Stewart take the position his reassignment was a transfer under Tenn. Code Ann. § 49-5-510 and subject to the transfer provisions of the agreement.

violations tied to removal from principal's position.

He also listed the specific provisions of the agreement he alleged to have been violated. On appeal, Mr. Stewart and the Association identify those provisions as follows:[13]

1. All transfers shall be performed pursuant to T.C.A. Title 49(5-510)

2. An involuntary transfer or reassignment shall be made only after a meeting between the employee involved and the superintendent at which time the employee will be notified in writing of the specific reasons for the change.

3. In those cases where an involuntary transfer is to be made for administrative reasons, the transfer shall be made for just case [sic], and there shall be a majority vote of the Board with the recommendation of the superintendent.

4. Non-tenured teachers shall be observed for purposes of evaluation at least three (3) times during the school year. Two of these observations shall occur prior to March 1 of each year and shall be scheduled so that no more than one (1) observation is made in any thirty (30) day period.

5. The Board shall not base any adverse action against a teacher upon materials which are not contained in such teacher's personnel file unless the materials had been placed in the file at the time of the incident giving rise to such materials and the teacher had been notified at such time that such materials were being placed in the file.

6. The Board, in recognition of the concept of progressive improvement, shall require notification to a teacher in writing of any alleged deficiencies, indicate expected correction, and indicate a reasonable period of correction.
(2) In the event that a deficiency could result in termination of employment, the teacher shall be responsible for notifying the Association.

7. No teacher shall be suspended, disciplined, reprimanded, adversely evaluated, reduced in rank or compensation or deprived of any professional advantage without just cause.

8. The Association and the Board agree that there shall be no discrimination in the hiring, training, assignment, promotion, transfer or discipline of teachers or in the application or administration of the Agreement on the basis of race, creed, color, national origin, age, sex, domicile or marital status. Further, there shall be no

---

[13]The parties identify these provisions by the numbering system and headings in the agreement. Because they are not sequential, we are listing them numerically for the sake of simplicity.

8

discrimination against any teacher because of his/her membership in the Association, his/her participation in any activities of the Association or collective professional negotiations with the Board, or his/her institution of any grievance, complaint or proceeding under this agreement, or law or otherwise with respect to any terms or conditions of employment.

9. (A) The personal life of a teacher is an appropriate concern of the Board when it prevents the teacher from performing properly his/her assigned functions
(B) No religious or political activities of any employee or the lack thereof shall be grounds for discipline or discrimination with respect to the employment of such teacher.

### III.

In the case before us, Mr. Stewart and the Association contend that the Board agreed to arbitrate a dispute arising under the agreement and that Mr. Stewart's transfer was the proper subject of the grievance procedures established in the agreement. Therefore, they contend, the trial court correctly concluded that the grievance was arbitrable. They further contend that the relief granted by the arbitrator was within his power under the agreement, and that the merits of the grievance were not before the court.

The Board, on the other hand, contends that the authority to select and appoint principals is a non-delegable duty resting exclusively with the director of schools, and the statutes cannot be read to make a delegation to the Board, the Association, or an arbitrator. They further contend that this statutorily-conferred responsibility cannot be limited by the collective bargaining agreement, according to the terms of the bargaining statutes themselves.

In *Carter County Bd. of Educ. v. Carter County Educ. Ass'n*, No. 03A01-9509-CH-00318, 1996 WL 251827 at *3 (Tenn. Ct. App. May 14, 1996) (*perm. app. denied* Oct. 7, 1996), this court determined that the statutory duty to elect a principal is non-delegable and not an issue subject to collective bargaining. In that case, a disappointed applicant for a vacant principal position, who was also a teacher in the system, filed a grievance challenging the hiring of another applicant, and she and the Association requested binding arbitration under the collective bargaining agreement. The trial court enjoined the arbitration, and this court affirmed.

In reaching its conclusion, this court found that, by then-existing statute, only the board of education had the right or authority to fill the position of principal and, consequently, selection of a principal was not subject to collective bargaining. We further stated:

And even if such an issue were included by the mutual consent of the parties into the collective bargaining agreement, it would be in direct violation of T.C.A. § 49-5-611(a) and § 49-5-602(a)(3). It would also be a non-delegable authority not subject to binding arbitration and in violation of § 49-2-203(a)(1) which confers the duty on

9

the local board of education to elect principals, supervisors, etc.

*Id.* at *3.

The court also determined that the apparently universal rule is that issues that lie within the prerogative of management are not proper subjects for collective bargaining or negotiation. *Id.* In particular, the court relied on 84 A.L.R.3d 242, *Bargainable or Negotiable Issues in State Public Employment Relations*, and the authorities cited therein:

> Perhaps the single greatest, and almost universally recognized, limitation on the scope of bargaining or negotiation by state public employees is the concept of managerial prerogative as it has developed in the public sector. In essence, the concept creates a dichotomy between "bargainable" issues, that is, those issues which affect conditions of employment, and issues of "policy" which are exclusively reserved to government discretion and cannot be made mandatory subjects of bargaining.

*Id.* at *3 (quoting 84 A.L.R.3d 242). The court also quoted with approval the decision of the Supreme Judicial Court of Massachusetts in *Berkshire Hills Reg'l Sch. Dist. Comm. v. Berkshire Hills Educ. Ass'n*, 377 N.E.2d 940 (Sup. Jud. Ct. Mass. 1978), which held that the power to appoint a principal is within the school committee's non-delegable managerial prerogative, largely because of the scope of the principal's duties and role in management. This court determined that Tennessee statutes give principals an even broader range of duties than Massachusetts statutes.

The Association and Mr. Stewart argue that the *Carter County* decision is not applicable herein because it dealt with the filling of a vacant principalship, not the transfer of a principal. They also argue that the 1998 amendments requiring that the superintendent's authority regarding certain personnel decisions be exercised consistently with locally negotiated agreements were a legislative overruling of the *Carter County* decision. We note that the 1998 amendments regarding compliance with locally negotiated agreements were not added to the statute on the superintendent's authority specifically regarding employment of principals.

In a more recent case, this court examined whether principals are members of the bargaining unit for purposes of negotiating certain terms of the collective bargaining agreement. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, No. E2000-01019-COA-R3-CV, 2001 WL 87472 (Tenn. Ct. App. Feb. 2, 2001) (no Tenn. R. App. P. 11 application filed). Adopting language from *Tenn. Op. Att'y Gen.* 97-106 (July 28, 1997) and reading the Education Improvement Act together with the Education Professional Negotiations Act, this court concluded that "principals are members of the bargaining unit for the purpose of negotiating those aspects of employment still under the control of the Board, while they are not members of the bargaining unit for the purpose of negotiating employment issues that are under the control of the superintendent." *Id.* at *11. The Opinion of the Attorney General relied upon by the court opined that under the EIA, principals negotiate with the superintendents, or directors, "regarding matters related to performance, accountability, and contract

renewal. Therefore, the bargaining units may not negotiate these matters with the school board on behalf of the principals."

Both the *Carter County* and the *Knox County* opinions are based on the fact that the Education Improvement Act gives exclusive authority to the director of schools to employ principals, to contract with them for non-statutory duties and performance standards, and to determine that a contract should not be renewed. Tenn. Code Ann. § 49-2-303(a)(1). The statute establishes no requirement for a minimum length of contract, but expressly limits its duration to the term of the contracting director of schools. It also includes no requirement that actions regarding employment of principals be consistent with collective bargaining agreements.

Specific statutory provisions, such as the one governing employment of principals, will be given effect over conflicting general provisions, such as Tenn. Code Ann. § 49-2-301(f)(1)(EE) governing all employees of the school system. *Dobbins v. Terrazzo Mach. & Supply Co., Inc.*, 479 S.W.2d 806, 809 (Tenn. 1972).

> The reason and philosophy of the rule [giving effect to specific statutory provisions over general ones] is that where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be construed as intended to affect the more particular provision.

*Lambert v. Invacare Corp.*, 985 S.W.2d 446, 448 (Tenn. Ct. App. 1998) (quoting *Woodroof v. City of Nashville*, 183 Tenn. 483, 192 S.W.2d 1013, 1015 (Tenn. 1946)).

IV.

The Association and Mr. Stewart do not dispute that it was Mr. Stewart's transfer from the principal position that was the subject of the grievance and the arbitration. They maintain, however, that the manner in which a principal is transferred to a teaching position is properly subject to collective bargaining, includable in an agreement resulting from that bargaining, and, therefore subject to grievance and arbitration.[14]

---

[14]The Association has argued that courts are limited in addressing the merits of a grievance that is subject to an arbitration clause, citing, among other cases, *Mechanics Universal Joint Div. Borg-Warner Corp. v. Fooshee*, 354 S.W.2d 59 (Tenn. 1962) and *Major League Baseball Players Ass'n v. Garvey*, 69 U.S.L.W. 3725 (2001). We do not disagree and do not interpret the question before us or our resolution of it as addressing the merits of Mr. Stewart's transfer. Neither do we view the question to be whether the agreement makes the transfer grievable and, therefore, subject to arbitration. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") The question before us is whether state law authorizes the inclusion in a collective bargaining agreement between a school board and the professional employees' association provisions which require arbitration of a superintendent's choice of principals. If such provisions are beyond statutory authority, they cannot be enforced.

11

Where, however, the agreement allows someone other than the superintendent to decide who will be principal at a particular school, that argument must fail. The legislature has clearly determined that superintendents have exclusive authority to employ principals, and we find no language in the Education Professional Negotiations Act or elsewhere to indicate that the legislature intended that authority could be exercised by an arbitrator.

In *Tennessee Small Sch. Sys. v. McWherter*, 894 S.W.2d 734 (Tenn. 1995), the Tennessee Supreme Court explained the enactment of the Education Improvement Act of 1992 against the backdrop of litigation over funding of school systems and the interrelationship of the funding mechanism, the Basic Education Program, part of the EIA, and the new provisions relating to performance standards for local school systems and accountability of local school officials.

> The significant provisions of the BEP other than funding are characterized as governance and accountability measures. These reforms are designed to address "the relative indifference" to education demonstrated by some local systems, which this Court found to be a contributing factor to the inequities in educational opportunities. *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d at 156. The BEP purports to accomplish these objectives by **granting to local officials more discretion in the management of the system and holding those officials accountable for obtaining measurable accomplishments in providing an effective educational system.**

*Id.* at 736-37 (emphasis added).

Interpreting the Education Professional Negotiation Act to remove decisions about who will fill the important managerial role of principal[15] at a particular school from the director of schools would be inconsistent with the legislative intent as expressed by our Supreme Court. It would also be inconsistent with the clear language of Tenn. Code Ann. § 49-2-303(a)(1). By limiting a principal's contract to the term of the current superintendent, the legislature clearly intended that a new superintendent be free to choose principals unencumbered by pre-existing contractual obligations. Faced with this clear statement of intent, we are unwilling to interpret less specific language elsewhere as authorizing usurpation of a superintendent's right to choose principals because of an agreement entered into before the superintendent's term by the Board and the Association.

The question of whether Mr. Stewart would remain principal of Jasper Elementary School was not subject to arbitration because that decision was solely the province of the director of schools and could not be delegated to an arbitrator. *See Carter County Bd. of Educ. v. Carter County Educ. Ass'n*, 1996 WL 251827. Therefore, any provisions of the agreement, or any interpretations of those

---

[15]Tenn. Code Ann. § 49-2-304 sets out the broad managerial, supervisory, and policy-related duties of the principal. In *Fleming v. Wade*, 568 S.W.2d 287, 289, 290 (Tenn. 1978) our Supreme Court characterized principals as "key figures in the orderly and efficient operation of the schools." The court also noted that "The Board of Education and the superintendent must necessarily be accorded considerable discretion in the employment and retention of such personnel."

provisions, which purport to remove the authority to select principals from the superintendent are beyond the permissible scope of such agreements. Tenn. Code Ann. § 49-5-604; Tenn. Code Ann. § 49-5-612(a).

In addition, the Association was not empowered to negotiate on behalf of principals any provisions relating to employment issues under the control of the superintendent. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 2001 WL 87472 at *11. Neither was the Board of Education authorized to agree to a limitation on the incoming director of schools' authority to select, negotiate directly with, and contract with principals. Thus, any provisions, or any interpretations of those provisions, which have the effect of limiting the superintendent's discretion with regard to selection, length of contract, renewal or non-renewal of contracts, performance, or accountability of principals are beyond the permissible scope of the agreement.

V.

Mr. Stewart and the Association argue that the agreement may properly include provisions regarding transfers and that failure to comply with those provisions is a subject for grievance and, therefore, arbitration. Tenn. Code Ann. § 49-5-510 provides that superintendents may transfer tenured teachers among schools and among positions "provided, that transfers shall be acted upon in accordance with board policy and any locally negotiated agreement." We have already concluded that an agreement which envisions substitution of the judgment of an arbitrator for discretion of the director of schools in the selection of principals is not authorized by law. Therefore, to the extent the transfer sections of the agreement are interpreted to apply to removal of a tenured teacher from a principalship to a teaching position, they cannot be enforced to allow an arbitrator to reinstate the transferred teacher to the principal position.[16]

We do not interpret the 1998 amendment to Tenn. Code Ann. § 49-5-510 to authorize the inclusion in or enforcement of provisions in a locally negotiated agreement which would restrict the superintendent's authority to remove a tenured teacher from a principal position and reassign that teacher to other duties.

> It is well-settled that the guiding principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993). In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language. *McClain v. Henry I. Siegel Co.*, 834 S.W.2d 295 (Tenn. 1992). Accordingly, statutes 'in pari materia' - - those relating to the same subject or having a common purpose - - are to be construed together, and the construction of one such statute, if doubtful, may be

---

[16]Interpretation of the agreement is not before this court. We note, however, that the decision in *Knox County Educ. Ass'n v. Knox County Bd. of Educ.* creates some question on whether those provisions can be applied to transfers from principal positions.

13

aided by considering the words and legislative intent indicated by the language of another statute. *Belle-Aire Village, Inc. v. Ghorley*, 574 S.W.2d 723, 725 (Tenn. 1978); *Spence v. Miles Laboratories, Inc*., 810 F. Supp. 952 (E.D. Tenn. 1992).

*Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994).

In seeking to ascertain the legislature's intent, we note that no amendment regarding a locally negotiated agreement was added to the statute authorizing the superintendent to select and contract with principals. As explained above, we discern the clear legislative intent is to provide discretion to the superintendent to make this important personnel decision. We find no clear expression of intent to subject that discretion to terms negotiated between the board of education and the association.

The legislature has stated that a principal who is also a tenured teacher retains rights of tenured teachers, including "those specified in § 49-5-510." That statute authorizes transfers "when necessary to the efficient operation of the school system." Our Supreme Court has explained the limitations on transfers of tenured teachers and the role of the courts in disputes regarding such transfers:

> An employee so transferred, however, is entitled to be protected from arbitrary and capricious action, or from transfers actuated by political or other improper motives. To this end he may bring a direct action in the courts to have determined the question of whether or not the transfer was made in accordance with the statutory requirements. Judicial review is limited to determining that question, and must be conducted in light of the broad discretion which the statutes clearly give to the superintendent and to the Board.

*McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d at 534.

This decision recognized that the court's review should be circumscribed by the statutory discretion vested in local school boards and superintendents, the inherently executive nature of personnel management decisions, and the presumption that public officials are discharging their duties in good faith. *State ex. rel. Pemberton v. Wilson*, 481 S.W.2d 760, 770 (Tenn. 1972); *Mayes v. Bailey*, 209 Tenn. 186, 192, 352 S.W.2d 220, 223 (1961). Thus, the Supreme Court has held that the scope of judicial review of local transfer decisions is "limited." *Pullum v. Smallridge*, 652 S.W.2d at 341; *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d at 534. The courts have continued to limit their review of transfer decisions made by local officials and to afford discretion to those officials. *See, e.g.*, *Springer v. Williamson County Bd. of Educ.*, 906 S.W.2d 924 (Tenn. Ct. App. 1995).

Thus, Mr. Turney's decision to transfer Mr. Stewart was reviewable, but by a court and under a limited standard of review. A court will not substitute its judgment for that of the superintendent, but will only inquire into whether the decision was arbitrary, capricious, or improperly motivated.

14

We need not determine whether a collective bargaining agreement may impose substantive requirements for transfers, such as a for cause limitation, beyond the statutory standard.[17]  Neither are we required to determine whether an agreement can impose procedural requirements, such as notice and a hearing.[18]  We have determined that, regardless of compliance with such terms, a superintendent's decision to transfer a principal cannot be subjected to binding arbitration wherein an arbitrator can make the choice of who will be principal.

VI.

The Board asserts that the court improperly granted an injunction requiring the Board to arbitrate.  The Association and Mr. Stewart had requested the injunction on the basis of the Board's refusal to arbitrate as provided in the bargaining agreement.  The Association and Mr. Stewart assert that the Board's actions in seeking a declaratory judgment and stay of arbitration constituted refusal to arbitrate.

Parties can agree to arbitrate certain issues.  However, the agreement herein removed from an arbitrator's authority any questions of law.  As this opinion demonstrates, the question of whether Mr. Stewart's transfer was subject to arbitration is a question of law requiring interpretation of several statutory provisions.  The Board properly sought judicial interpretation and asked for a declaratory judgment which would have disallowed the arbitration.  We find nothing improper in this action, and do not consider it evidence of bad faith refusal to arbitrate under Tenn. Code Ann. § 49-5-609(a)(8).

The injunction was issued as part of the trial court's decision that the transfer was subject to arbitration.  In view of our decision herein, and in view of this court's earlier denial of the Board's motion to stay, the question of whether the injunction should have been granted is moot.

VII.

For the reasons stated herein, the decision of the trial court requiring the Board to submit to binding arbitration over Mr. Stewart's transfer is reversed.  Since the Board was not required to arbitrate the transfer, the result of the arbitration is void.  Further, the arbitrator was without authority

---

[17]The agreement herein attempts to subject the director's determination regarding transfer, when that transfer is "involuntary" and made for administrative reasons, to approval by the Board.  Such a requirement imposed on a transfer from a principalship would appear to directly conflict with the director's authority under Tenn. Code Ann. § 49-2-303(a)(1).

[18]Absent such provisions, our courts have determined that transfer of a tenured employee need not be preceded by a formal written notice or a hearing.  *McKenna v. Sumner County Bd. of Educ.*, 574 S.W.2d at 533-34; *Pemberton v. Wilson*, 481 S.W.2d at 770.

to reinstate Mr. Stewart and that decision cannot be enforced. This cause is remanded to the trial court for further actions consistent with this opinion. Costs of this appeal are taxed to the Association and Mr. Stewart, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE