IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2013 Session

## THE METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, TENNESSEE v. METROPOLITAN NASHVILLE EDUCATION ASSOCIATION

**Appeal from the Chancery Court for Davidson County**
**No. 101538I     Claudia Bonnyman, Chancellor**

**No. M2012-02006-COA-R3-CV - Filed August 27, 2013**

County board of education filed a declaratory judgment action seeking declaration that the high school principal's decisions to re-assign certain extracurricular sponsorships were not subject to arbitration under the collective bargaining agreement between the board of education and the education association. The trial court entered judgment in the board of education's favor and the education association appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Richard Lee Colbert and Courtney Lynch Wibert, Nashville, Tennessee, for the appellant, Metropolitan Nashville Education Association.

Emily Herring Lamb and Lora Barkenbus Fox, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson County, Tennessee.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Carol Trusty ("Ms. Trusty") is a teacher employed by the Metropolitan Nashville Board of Public Education ("Board"). During the 2008-2009 school year at Antioch High School, Ms. Trusty was the assigned sponsor for drama club, forensics club, National Honor Society, the talent show, and the prom fashion show. Pursuant to a collective bargaining educational agreement between the Board and the Metropolitan Nashville Education

Association ("MNEA"),[1] a teacher who sponsors drama club and forensics club receives a salary supplement (then 5%). Sponsorships of National Honor Society, the talent show, and the prom fashion show did not include salary supplements.

In January 2009, Antioch High School principal Aimee Wyatt ("Principal") sought permission from the director of schools to transfer Ms. Trusty to another school at the end of the year. On May 11, 2009, Ms. Trusty was transferred to another school but, upon reconsideration, the director of schools reversed the decision, so she continued to teach at Antioch during the 2009-2010 school year.

The Principal drafted the following school year's tentative master teaching schedule that included changes to Ms. Trusty's classroom, the subjects she would teach, and her extracurricular sponsorships such that Ms. Trusty lost the forensics club salary supplement and was no longer the sponsor for National Honor Society, the talent show, or the prom fashion show.

In September 2009, pursuant to the bargaining agreement, Ms. Trusty and MNEA filed a formal grievance to challenge the Principal's decisions. In her level 1 grievance,[2] Ms. Trusty sought to "have her [previous year's] teaching schedule restored" and "to have the same room placement, responsibilities, and supplements" that were assigned to her in the 2008-2009 school year. She alleged that the Principal retaliated against her for previously having grieved another matter involving the Principal's use of supply funds. Ms. Trusty and MNEA also asserted that the Principal had Ms. Trusty's daily arrival time monitored and that she subjected her to standards of timeliness different from those applied to other teachers.

The Principal, the interim associate superintendent, and the director of schools, respectively, considered and denied Ms. Trusty's grievance at levels 1 through 3. In denying the level 1 grievance, the Principal noted that her decisions to appoint other individuals to the specified extracurricular sponsorships, to assign Ms. Trusty to teach other subjects, and to assign her to another classroom were "not grievable under the MNEA contract because they are left up to the principal's discretion." The Principal explained that she appointed someone else to sponsor National Honor Society because "no dues were paid to the national

_____

[1] MNEA is the professional employees' organization for Metropolitan Nashville public school educators.

[2] Pursuant to the formal grievance procedure, as set forth in Article IX of the bargaining agreement, a teacher may have his/her alleged grievance reviewed at four levels. An alleged grievance is reviewed by "the principal or other appropriate administrator" at level 1, "the administrator or his/her designee" at level 2, and "the director of schools or his designee" at level 3. If the teacher's alleged grievance is not resolved at level 3, he/she may proceed to level 4, arbitration.

chapter for at least the last year while Ms. Trusty was the sponsor," resulting in no Antioch High School students being inducted in 2008-2009. After the level 3 hearing, the director of schools issued a lengthy decision in which he concluded:

> An aggrieved teacher has a right to go to court to challenge a principal's decision whom to appoint as a coach or as a sponsor of an extra-curricular club and to challenge a principal's decision [on] what classes a teacher is assigned to teach. Nothing in a collective bargaining agreement can be construed to make these decisions the proper subject of a grievance under a collective bargaining agreement, and thus subject to review by an arbitrator. The decisions Ms. Trusty attacks are "non-grievable."

The director also concluded that Ms. Trusty waived the issue of alleged monitoring of her arrival times because she failed to raise it at the level 2 or level 3 hearings.

In February 2010, Ms. Trusty and MNEA proceeded to level 4 of the grievance procedure by filing a demand for final and binding arbitration. MNEA participated in the June 2010 arbitration hearing, but the Board, contending that "the matters presented are non-grievable under state law as interpreted by Tennessee courts," did not participate. The arbitrator found in Ms. Trusty's favor and concluded that the Principal's decisions were retaliatory and subject to arbitration. The arbitrator directed the Board to reinstate Ms. Trusty to all of her former extracurricular sponsorships, to pay her a 5% supplement of $3,171.70 plus 10% per annum interest, and to cease and desist any further retaliatory action. The parties received a $2,527 bill for arbitration costs.

In response, the Board sought a declaratory judgment that the subject matter of the arbitration was non-grievable, that the arbitrator exceeded his authority in ruling on a school administrator's decisions that could not be subject to arbitration through a collective bargaining agreement, and that the Board did not have to pay the arbitration fees. The Board requested that the court vacate the arbitrator's award. In its amended answer and counterclaim, MNEA asserted that the Board breached the collective bargaining agreement and violated Tenn. Code Ann. § 49-5-609(a)(2) by refusing to comply with the arbitrator's award.

The trial court denied the Board's motion for judgment on the pleadings, directing that the "case should more appropriately be examined by summary judgment." Upon the Board's proper motion and after a hearing, the trial court vacated the arbitration decision by order entered March 13, 2012. The trial court found that "[t]he factual disputes MNEA attempted to raise are not material." Relying upon *Lawrence County Education Association v. Lawrence County Board of Education*, 244 S.W.3d 302 (Tenn. 2007), the trial court found

that the assignments to sponsor forensics club, National Honor Society, and the talent show and prom fashion show fundraisers "did not require a teaching license, [so] the arbitrator's authority cannot extend to them, and therefore he exceeded his power when he ordered the Board to return Ms. Trusty to those assignments."

On May 8, 2012, the trial court granted the Board's motion for discretionary costs but ordered the parties to file motions for summary judgment regarding the arbitration fees. By final order entered August 24, 2012, the trial court granted the Board's motion for summary judgment regarding arbitration costs, finding that it "had no obligation to arbitrate Ms. Trusty's complaint; the Board is not liable for any portion of the arbitration costs." The court also vacated the arbitrator's award in its entirety.

MNEA timely perfected this appeal.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).[3]

When we must interpret the meaning of a statute, our review is de novo without deference to the decision of the court below. *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). The following well-settled principles guide our interpretation and application of legislative enactments:

---

[3] Tennessee Code Annotated section 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011). The Board filed its declaratory judgment action on September 21, 2010.

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. To that end, we start with an examination of the statute's language, presuming that the legislature intended that each word be given full effect. When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning."

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) (citations omitted).

ANALYSIS

*Arbitrability of Assignments to Sponsorships*

I.

Ms. Trusty chose to submit her grievance to arbitration as established in the 2008-2009 collective bargaining educational agreement between the Board and MNEA. The Board and MNEA entered into this bargaining agreement pursuant to Tenn. Code Ann. § 49-5-601 *et seq.*, formerly titled the Education Professional Negotiation Act ("EPNA") and now cited as the Professional Educators Collaborative Conferencing Act of 2011 ("PECCA"). One of the act's objectives is to "set forth and recognize the legitimate rights and obligations of boards of education and their professional employees." Tenn. Code Ann. § 49-5-601(b)(1). A "professional employee" is "any person employed by any local board of education in a position that requires a license issued by the department of education . . . ." Tenn. Code Ann. § 49-5-602(8).[4]

In *Lawrence County Education Association v. Lawrence County Board of Education*, 244 S.W.3d 302 (Tenn. 2007), our Supreme Court clarified that the provisions codified at Tenn. Code Ann. § 49-5-601 *et seq.* apply to licensed professional employees. The court established that "[c]oaching and equivalent positions in public . . . schools do not require such a license in the same regard as the teaching profession . . . . [so] any contractual protections emanating from the EPNA are relevant to persons only in their status as professional employees and not in their status in non-licensed positions." *Lawrence Cnty.*, 244 S.W.3d at 316.

_____

[4] In all significant respects, the definition of "professional employee" is the same under PECCA as it was under the EPNA. Although this case arose under the EPNA, our decision in this appeal is relevant under PECCA.

-5-

As our previous decisions explain, the provisions codified at Tenn. Code Ann. § 49-5-601 *et seq*. are not intended "to alter the assignment of duties made elsewhere in statutes pertaining to local administration of schools." *Cannon Cnty. Bd. of Educ. v. Wade*, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *7 (Tenn. Ct. App. July 31, 2008) (citing *Marion Cnty. Bd. of Educ. v. Marion Cnty. Educ. Ass'n*, 86 S.W.3d 202, 208 (Tenn. Ct. App. 2001)). The legislature has expressly stated in the EPNA that the "rights and responsibilities of boards of education, directors of schools and professional employees as contained in this title are not statutorily modified or repealed by this part." Tenn. Code Ann. § 49-5-604(a). Furthermore, in *Metropolitan Nashville Education Association v. Metropolitan Board of Public Education*, No. M2008-00405-COA-RM-CV, 2009 WL 837884 (Tenn. Ct. App. Mar. 30, 2009), this Court observed that, under *Lawrence County*, "'regardless of the language of the locally negotiated agreement, coaching and other assignments that do not require a license are not subject to the collective bargaining process because of the wording of specific provisions of the EPNA.'" *Id*. at *4 (quoting *Cannon Cnty*., 2008 WL 3069466, at *7).

II.

We must now determine whether the assignments about which Ms. Trusty submitted her grievance to arbitration pursuant to the bargaining agreement between the Board and MNEA were subject to arbitration. The specific issue before us is whether the Principal's decisions to assign the positions of forensics club sponsor, National Honor Society sponsor, talent show sponsor, and prom fashion show sponsor to someone other than Ms. Trusty for the 2009-2010 school year were subject to the grievance procedure and arbitration under the bargaining agreement.

Our previous decisions, as outlined above, are consistent with the trial court's conclusions in its order granting summary judgment that "[d]ecisions to assign positions for which no teaching license is required are not subject to the grievance procedure contained in a collective bargaining agreement" and that "[a]n arbitrator's authority cannot extend to assignments that do not require a license." Here, as the undisputed facts demonstrate, the sponsorships that the Principal assigned to Ms. Trusty are not required to be held by licensed professional employees.[5] In its amended answer, MNEA admitted that the forensics club, National Honor Society, talent show, and prom fashion show sponsorships do not require a professional license, with the caveat that those sponsorships "traditionally are assigned to professional employees." In this case, the Principal's "traditional" or past discretionary

---

[5] In response to MNEA's interrogatories, the Board clarified that the talent show and prom fashion show sponsorships are not true "assignments" from the Principal, but are fundraisers that an employee requests to hold during a given school year. These fundraisers do not include a salary supplement like that provided for the forensics club sponsor.

assignments are immaterial. The Principal testified as follows:

> Q. The students that are in the Forensics Club, do they have a separate class during the school day?
>
> A. Yes. Typically, the students who are enrolled in the [speech] course during the day also participate in the club; but it does not have to be the same group.
>
> Q. And is the speech teacher[6] usually the forensics sponsor?
>
> A. Typically, but it's not a requirement because not all schools offer speech during the day.
> . . .
>
> Q. What about, are there any qualifications to be the sponsor of the Forensics Club?
>
> A. No.
> . . .
>
> Q. Are all of the faculty sponsors a year-to-year assignment?
> . . .
>
> A. Yes.

The record also contains evidence that, in 2011, a non-licensed support staff employee was assigned to sponsor the yearbook and that such assignment included a salary supplement.

In sum, the evidence shows that none of Ms. Trusty's previously held sponsorships required a professional teaching license. Therefore, in light of *Lawrence County* and its progeny, we hold that assignments to extracurricular sponsorships for which no professional license is required are not covered by the protections provided in Tenn. Code Ann. § 49-5-601 *et seq*. and are not subject to the collective bargaining process. For that reason, an arbitrator's authority cannot extend to such sponsorships. We accordingly affirm the trial court's grant of summary judgment to the Board. The arbitrator's decision is unenforceable, so we affirm the trial court's order vacating it in its entirety.

---

[6] Ms. Trusty was the speech teacher during the 2008-2009 school year, but not during the following year.

*Arbitration Costs*

The bargaining agreement between the Board and MNEA includes a provision that the parties will share arbitration fees and expenses. The Board did not participate in the arbitration and the arbitration award cannot be enforced against the Board. The trial court correctly ruled that the Board is not liable for any portion of the arbitration costs.

CONCLUSION

We affirm the trial court's orders in their entirety. Costs of appeal are assessed against the Metropolitan Nashville Education Association, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE