**FRIZZELL CONSTRUCTION COMPANY, INC. Plaintiff/Appellant,**

v.

**GATLINBURG, L.L.C., Defendant/Appellee.**

Supreme Court of Tennessee, at Knoxville.

Nov. 15, 1999.

C. Paul Harrison, Knoxville, Donald A. Harper, Greenville, South Carolina, for Appellant.

Bernard E. Bernstein, Celeste H. Herbert, Knoxville, for Appellee.

## OPINION

WILLIAM M. BARKER, Justice.

In this appeal, we address two primary issues: (1) whether the contract in this case providing for construction of a hotel in Tennessee "involves" interstate commerce so as to implicate the Federal Arbitration Act, and (2) whether the chancery court erred in withholding contract formation issues from arbitration. We hold that the contract in this case plainly involves interstate commerce and that the parties did not intend to arbitrate a claim of fraudulent inducement to enter a contract. Therefore, in accordance with the Federal Arbitration Act, the chancery court properly retained jurisdiction over the claim of fraudulent inducement to enter a contract. The judgment of the Court of Appeals is affirmed.

## BACKGROUND

On April 4, 1995, Gatlinburg, L.L.C. ("Gatlinburg"), entered into a contract with Frizzell Construction Company, Inc. ("Frizzell"), for the construction of a hotel in Sevier County, Tennessee. Gatlinburg owned the project, and Frizzell served as the management company in charge of constructing the hotel. The contract contained a provision stating that the laws of Tennessee would govern the contract and a provision requiring arbitration of "[a]ll claims, disputes and or other matters in questions arising out of, or relating to, this Agreement or the breach thereof...." [1]

Shortly after the substantial completion of the hotel, a dispute arose between the parties relating to certain payments due to Frizzell under the contract. This dispute ultimately culminated in Frizzell filing a "Complaint to Enforce Mechanic's Lien and for Breach of Contract" in the Sevier

---

1. The choice-of-law provision in section 14.2 of the contract states that "[t]his agreement shall be governed by the law of the place where the Project is located." The parties agree that the clause contemplates application of Tennessee law.

County Chancery Court on August 22, 1997. On October 27, 1997, Gatlinburg filed its Answer, and in an amended counterclaim, Gatlinburg alleged that the contract was fraudulently induced through Frizzell's misrepresentation of its expertise and ability to complete the project for the stated amount. On November 3, 1997, Frizzell made a demand for arbitration, and eight days later, Frizzell filed a motion to stay the court proceedings pending arbitration.

The chancellor granted Frizzell's motion to stay and submitted the issues concerning overdue payment to arbitration. However, the court withheld from arbitration Gatlinburg's allegation of fraudulent inducement because Tennessee law does not permit arbitration of this claim. In a motion to reconsider, Frizzell argued that because the contract involves interstate commerce, the Federal Arbitration Act ("FAA") required submission of all disputes, including that of fraudulent inducement, to the arbitrator. The chancellor disagreed and held that the contract did not "involve interstate commerce so as to bring the contract under the FAA." The chancellor also held, without stating any reasons, that even if the contract did involve interstate commerce, the FAA was nevertheless inapplicable.

The Court of Appeals affirmed the decision of the trial court to withhold the issue of fraudulent inducement from arbitration. While the Court of Appeals did not decide whether the contract involves interstate commerce, the court held that because the parties had chosen Tennessee law to govern the contract, the issue of fraudulent inducement could not be submitted to the arbitrator. The Court of Appeals also held that any decision as to whether the contract was subject to the FAA was "premature" until a determination was made under Tennessee law that the contract was valid.[2]

We granted review to decide (1) whether this contract involves interstate commerce, and (2) whether the trial court erred in withholding the claim of fraudulent inducement from arbitration. We hold that this contract plainly involves interstate commerce and that the FAA does apply to enforce the agreement according to its terms. Because we find that the contract evidences the intent of the parties to judicially resolve a claim of fraudulent inducement, we also hold that the chancellor properly withheld this issue from arbitration.

## ANALYSIS

■ The FAA ensures the enforcement of written agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce...." *See* 9 U.S.C. § 2 (1994). Therefore, we must first decide whether this contract is one "evidencing a transaction involving commerce" before we can decide the proper application of the FAA.

■ On their face, the words "evidencing" and "involving commerce" do not seem as broad as the phrase "affecting commerce," which is the language typically used by Congress to invoke the full range of its commerce power.[3] However, the United States Supreme Court has stated that "the word 'involving' is broad and is indeed the functional equivalent of 'affect-

---

**2.** The Court of Appeals reasoned that "[i]f [the contract] is rescinded, there is nothing to arbitrate. On the other hand, if the contract is found to be valid and binding, the disputes between the appellant and the appellee are subject to arbitration." *Frizzell Constr. Co. v. Gatlinburg, L.L.C.,* No. 03A01–9805–CH–00161, slip op. at 7, 1998 WL 761840 (Tenn. Ct. App. Nov.2, 1998).

**3.** As the United States Supreme Court has stated, "Again, half a dozen enactments ... are sufficient to illustrate that when [Congress] wants to bring aspects of commerce within the full sweep of its constitutional authority, it manifests its purpose by regulating not only 'commerce' but also matters which 'affect', 'interrupt', or 'promote' interstate commerce." *See Polish Nat'l Alliance v. NLRB,* 322 U.S. 643, 647, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944).

ing.'" *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). As such, the FAA "embodies Congress'[s] intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). This interpretation is supported by the original report of the House of Representatives, which further indicates that the phrase "involving commerce" is not meant to restrict the reach or application of the FAA. The report states that "[t]he control over interstate commerce reaches not only the actual physical interstate shipment of goods but also contracts *relating to* interstate commerce." H.R.Rep. No. 96, at 1 (1924), *quoted in Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (emphasis added).

▮ As part of its constitutional authority to regulate interstate commerce, Congress may regulate intrastate activities that have a substantial relation to interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 557–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). After a careful review of the record, we find that such a relation is present in this case. At least six out-of-state contractors participated in the construction of the hotel, at least nine employees were employed from outside Tennessee, and at least seven out-of-state vendors supplied more than $380,000 worth of materials for the project.[4] An Ohio corporation insured the project,[5] and a Delaware corporation based in New Jersey issued a payment and performance bond along with a bond to discharge liens filed against the project as required by the contract.[6] The construction financing was accomplished with the assistance of three out-of-state banks,[7] and the purpose and scope of the agreement was to develop a commercial venture extending beyond Tennessee.[8] When all of these factors are viewed together, it is clear that this contract is one that "involves commerce."[9]

▮ Because the contract in this case is one that involves interstate commerce, the

4. *See Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853, 855 (Tenn. 1982) (finding interstate commerce present in part because the "materials used, the labor employed, and the subcontractors involved ... came to the project from outside Tennessee").

5. *See United States v. Dye Constr. Co.*, 510 F.2d 78, 83 (10th Cir.1975) (finding interstate commerce in part when insurance was acquired from out-of-state sources).

6. *See, e.g., American Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 963 (4th Cir.1980) (finding interstate commerce present in part because performance bonds were issued by out-of-state corporations); *Lost Creek Util. v. Travis Indus. Painters*, 827 S.W.2d 103, 105 (Tex.Ct.App.1992) (finding interstate commerce in part because the performance bond was given by a surety company headquartered in another state).

7. *See, e.g., Roberson v. The Money Tree of Alabama, Inc.*, 954 F.Supp. 1519, 1523 (M.D.Ala.1997) (finding that a contract "involves commerce" in part because the financing was obtained from out-of-state banks).

8. *See, e.g., Foster v. Turley*, 808 F.2d 38, 40–41 (10th Cir.1986); *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F.Supp. 1305, 1310–11 (D.D.C.1981) (stating that the FAA applies when purpose and scope of agreement is to develop commercial venture extending beyond state line). In this case, the intent to develop a commercial venture extending beyond Tennessee is evidenced by efforts to market the hotel through a nationwide reservation system and by the fact that the completed hotel is a franchise of a national hotel chain.

9. Gatlinburg argues primarily that this contract does not involve interstate commerce because the contract itself does not contemplate interstate activity. The test under the FAA, however, is whether interstate commerce *is present in fact*, not whether the parties contemplated that interstate activity would occur. *See Allied–Bruce Terminix Cos.*, 513 U.S. at 281, 115 S.Ct. 834. Since interstate commerce is plainly present in fact, the appellee's argument is without merit.

FAA applies to ensure that the arbitration agreement between the parties is enforced according to its terms. Section two of the FAA states that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Although the provisions of the FAA are to be applied in both state and federal courts, *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 684–85, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)), the "FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

 The purpose of the FAA is "to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Volt Info. Sciences, Inc.,* 489 U.S. at 476, 109 S.Ct. 1248. However, parties cannot be forced to arbitrate claims that they did not agree to arbitrate. As the United States Supreme Court has stated,

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

*Volt Info. Sciences, Inc.,* 489 U.S. at 479, 109 S.Ct. 1248 (citations omitted).

 The FAA's "proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono,* 514 U.S. at 57, 115 S.Ct. 1212. Because "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). When parties agree to arbitration, the FAA ensures enforcement of that agreement by withdrawing "the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp.,* 465 U.S. at 10, 104 S.Ct. 852. However, consistent with the FAA, parties may agree that only certain issues will be submitted to arbitration or that they will not arbitrate at all. *Cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

 Therefore, the question essentially becomes "what the contract has to say about the arbitrability of petitioner's claim. . . ." *Mastrobuono,* 514 U.S. at 58, 115 S.Ct. 1212. If the parties in this case agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law,[10] the claim must be submitted to arbitration. Conversely, if the parties did not agree to arbitrate the claim of fraudulent inducement, then they can not be compelled to arbitrate the claim despite its arbitrability under the FAA.[11]

---

**10.** In *City of Blaine v. John Coleman Hayes & Associates, Inc.,* 818 S.W.2d 33, 38 (Tenn. Ct. App.1991), the Court of Appeals held that the issue of fraudulent inducement could not be submitted to arbitration under the Tennessee Uniform Arbitration Act, Tenn.Code Ann. §§ 29–5–301 to –320 (Supp.1990).

**11.** Citing the Supreme Court's decision in *Prima Paint Corp.,* Frizzell argues that the FAA compels the conclusion that a claim of fraudulent inducement to enter a contract is to be resolved in arbitration. While a claim of fraud in the inducement of a contract is certainly arbitrable under the FAA, a more close reading of the opinion, however, shows that the issue arose because "there [was] no evidence that the contracting parties intended to withhold that issue from arbitration." 388 U.S. at 397, 87 S.Ct. 1801. If evidence of such an intent had been presented in *Prima Paint Corp.,* then a different conclusion may have resulted. The FAA simply does not com-

▨ Courts should generally apply "ordinary state-law principles" in deciding whether the parties agreed to submit certain issues to arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citing *Mastrobuono*, 514 U.S. at 62–63, 115 S.Ct. 1212). Under Tennessee law, the law governing this contract, the "cardinal rule [in interpreting contracts] ... is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975). Courts may determine the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn.1990). No single clause in a contract is to be viewed in isolation; rather, the contract is to be "viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn.1985).

In this case, the arbitration clause purports to govern "[a]ll claims, disputes and other matters in questions arising out of, or relating to, this Agreement...." Viewed in isolation, the breadth of this clause appears to evidence an intent to submit all issues to arbitration, including issues of contract formation. However, reading the contract as a whole, the arbitration clause—along with every clause in the contract—is limited and subject to the additional qualification that Tennessee law provides the basis for deciding questions concerning its scope and interpretation.

Although the appellant urges that the Tennessee choice-of-law clause is without effect upon the arbitration clause, we can find no support for this proposition in the contract itself. The choice-of-law clause plainly states that it governs the entire agreement, and no provision in the contract appears to be exempt from the effects of the choice-of-law clause. By stating that the contract is to be governed by Tennessee law, the parties have indicated their intention to arbitrate all disputes "arising out of, or relating to" their agreement—but only to the extent allowed by Tennessee law.[12] Interpreting each clause in light of the other, we read the arbitration clause to more accurately state, "In accordance with Tennessee law, all claims, disputes, and other matters in questions arising out of, or relating to, this Agreement ... shall be decided by arbitration...." Therefore, because Tennessee law contemplates judicial resolution of contract formation issues, we conclude that the parties have indicated their intention not to submit such issues to arbitration.

▨ The FAA requires the courts of this state to enforce arbitration agreements according to their terms. Because the parties in this case have agreed to arbitrate their disputes to the extent allowed by Tennessee law, we therefore hold that the chancery court properly submitted all issues relating to the merits of the

pel arbitration of any issue unless (1) an express agreement exists to arbitrate a specific issue, or (2) doubt exists as to whether the parties intended to withhold a specific issue from arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

12. The parties in this case were both relatively sophisticated business contractors, and presumably, they were well aware that Tennessee law does not allow arbitration of contract formation issues. As such, the parties could have drafted the arbitration clause with some ease to specifically include arbitration of contract formation issues. The failure to do so, coupled with the express adoption of Tennessee law to govern the contract, leads this Court to conclude that the parties did not intend for contract formation issues to be decided by the arbitrator.

contract to arbitration. We also hold that the chancery court properly withheld the issue of fraudulent inducement from arbitration in accordance with the intention of the parties.

As evidence that a choice-of-law clause can not modify an arbitration clause, the appellant quotes our statement in *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 637 S.W.2d 853 (Tenn.1982), that "parties should not be able to render [the FAA] inapplicable by providing for arbitration under the laws of a particular state." *See* 637 S.W.2d at 857. In *Tennessee River*, however, we did not specifically address the effects of a choice-of-law clause upon other contract provisions. We only held that the FAA rendered arbitration agreements fully enforceable according to their own terms, thereby modifying our common law. We did not hold that parties are incapable of choosing the law by which arbitration is to be conducted. Such a rule would be contrary to the declaration that "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *See Mastrobuono*, 514 U.S. at 57, 115 S.Ct. 1212.

Therefore, consistent with the policies underlying the FAA, our holding in this case simply reflects that parties may choose the arbitration law by which they intend to be governed. The enforcement of this agreement according to the intent of the parties is in full accord with the FAA, even if the result is that the parties agree to submit some issues for judicial resolution that the FAA would otherwise permit arbitration to resolve. This Court "may give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA." *See Volt Info. Sciences, Inc.*, 489 U.S. at 479, 109 S.Ct. 1248.

## CONCLUSION

To summarize, we hold that the chancery court erred in finding that this contract is one not "evidencing a transaction involving commerce." We also hold that when viewed as a whole, the contract reveals the intention of the parties to arbitrate all disputes to the extent allowed by Tennessee law. Because the parties did not intend to arbitrate contract formation issues, the chancellor's decision not to submit the claim of fraudulent inducement to arbitration was consistent with the FAA. Therefore, we affirm the judgment of the Court of Appeals and remand the sole issue of fraudulent inducement to the chancery court for further proceedings consistent with this opinion.

Costs are assessed to the appellant, Frizzell Construction Company, Inc.

ANDERSON, C.J., DROWOTA, BIRCH, JJ., BYERS, S.J., concur.