IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## CHRISTINE BERKLEY, Individually and on behalf of all persons similarly situated, etc., v. H&R BLOCK EASTERN TAX SERVICES, INC.

**Direct Appeal from the Circuit Court for Carter County**
**No. C7219    Hon. Thomas J. Seeley, Jr., Circuit Judge**

---

**No. E1999-00379-COA-R9-CV - Decided May 4, 2000**

---

This is an interlocutory appeal from the Trial Judge's refusal to enforce an arbitration agreement entered by the parties. Defendant has appealed. We reverse and remand with instructions to enforce the arbitration agreement.

**Tenn. R. App. P.3 Interlocutory Appeal by Permission from the Trial Court; Judgment of the Circuit Court Reversed.**

FRANKS, J., delivered the opinion of the court, in which GODDARD, P.J., and SUSANO, J., joined.

Gary C. Shockley and Alice Corker, Baker, Donelson, Bearman & Caldwell, Nashville, Tennessee and N. Louise Ellingsworth, Daniel R. Young, and Michael D. Pospisil, Kansas City, Missouri, for Appellant.

Gordon Ball, Knoxville, Tennessee for Appellees.

**OPINION**

The dispositive issue on appeal is whether the contract signed by the parties containing an arbitration agreement is enforceable.

In 1986, the Internal Revenue Service first allowed taxpayers to electronically file tax returns, and defendant H&R Block ("Block") began offering electronic filing through a program known as "Rapid Refund" as a part of its tax preparation services. For the 1987 tax year, Block, in

conjunction with various lenders, began promoting another service known as the "Refund Anticipation Loan" or "RAL", which allows taxpayers to receive a loan from the lender using their anticipated tax refund as collateral.

Block customers given the RAL option, must first complete an application. The application is then sent via "Compuserve" in Ohio to the lender, Beneficial National Bank, in Delaware. Once approved by the lender, within two to four days, a check is presented by Block to the customer. In this process, the customer pays Block its usual preparation and electronic filing fees, and if the application is approved, the customer also pays the lender a finance charge.

Plaintiff, Christine Berkley, contracted with Block in 1994, 1995, 1996 and 1997 to assist her in preparing her federal income tax returns for those years. Having been advised by Block that she could receive her refund much sooner if she obtained a RAL, plaintiff applied for RALs in at least three of those years.

Plaintiff executed the standard RAL application form in 1997 for the 1996 tax year. The application disclosed the cost of the loan and included a specific warning that "because the APR on a RAL may be high in certain cases relative to other sources of credit, you may wish to use such sources; e.g., credit cards, equity loans, etc., instead of a RAL."

Section 7 of the RAL application is an agreement to arbitrate. This provision, which was not in the applications of prior years, is as follows:

> **ARBITRATION:** The parties to this RAL application, the Loan Agreement on the RAL check that I signed and any such prior agreements involving the same parties (collectively, the "Agreements") hereby agree that any claim or dispute (whether in contract, tort or otherwise) in any way relating to the Agreements or relating to the relationships of such parties including the validity or enforceability of this arbitration provision or any part thereof, (collectively the "Claim"), shall be resolved, upon the election of either party, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed. No class actions are permitted to this arbitration without the consent of the parties. The parties agree that for purposes of this arbitration provision, H&R Block, Inc., its subsidiaries, franchisees, affiliates, agents, and employees (collectively "Block") shall be an intended third party beneficiary of the Agreements and a party to this arbitration provision and any transaction made pursuant to these Agreements involving Block shall be considered a Claim and resolved pursuant to this arbitration provision. Rules and forms of the national Arbitration Forum may be obtained by calling (800) 474-2371 and all Claims shall be filed by certified mail at any National Arbitration office or at Post Office Box 50191, Minneapolis, Minnesota 55405. Any participatory arbitration hearing that I attend will take place in the federal judicial district in which I live. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. The award of the Arbitrator shall

apply relevant law and provide written, reasoned findings of fact and conclusions of law, and shall not be subject to appeal. Judgment upon the award may be entered in any court having jurisdiction. Nothing in this arbitration provision shall be construed to prevent BNB's use of offset of other contractual rights involving my income tax refund or other amount on deposit with BNB to pay off any RAL debts nor or hereafter owed by me to BNB or any other RAL Lender or ERO pursuant to the Agreements. **The parties hereto acknowledge that they have a right to litigate claims in court, but they prefer to resolve such claims through arbitration and hereby waive their rights to litigate such claims in court upon election of arbitration by either party.** The parties further agree that any Claim hereunder shall be limited to no more than the claimant's actual compensatory, economic damages plus punitive damages, if any in the Arbitrator's discretion, of no more than 3 times the claimant's respective actual compensatory, economic damages or $50,000 whichever is lesser, and that each party shall bear the expense of their respective attorney's fees regardless of which party prevails.

(Bold in original.)

Plaintiff, in her complaint, charged Block with engaging in unfair or deceptive conduct by, among other things, failing to disclose to her and other Block customers that it received "kickbacks" from the "Refund Anticipation Loan" program. Plaintiff's complaint alleged a violation of the Tennessee Consumer Protection Act, T.C.A. §47-18-101 *et seq;* breach of Brock's duty to deal with her fairly and in good faith, and breach of Brock's fiduciary duty and unjust enrichment. Subsequently, she filed a "First Amended Complaint" dropping the claim for breach of fiduciary duty, and adding the claim for breach of principal-agency relationship. Subsequently, she moved to amend the complaint to particularize the factual allegations to seek injunctive relief and demand a jury.

Subsequently, the Trial Court refused to compel arbitration, but granted an interlocutory appeal, which this Court accepted, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

The arbitration agreement states that "any claim or dispute (whether in contract, tort or otherwise) in any way" relating to the RAL program "shall be resolved, upon the election of either party, by binding arbitration." Block has clearly announced its election to submit the dispute to arbitration.

The Federal Arbitration Act, 9 U.S.C. §2, provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable,

-3-

save upon such grounds as exist at law or in equity for the revocation of any contract.

The Supreme Court of Tennessee recently reiterated and emphasized the applicability of the FAA in the courts of this state in *Frizzell Construction Co. Inc. v. Gatlinburg, L.L.C.,* 9 S.W.3d 79 (Tenn. 1999).

A contract "evidencing a transaction involving commerce" may be regulated by Congress as part of its authority to regulate interstate commerce, and includes intrastate activities that have a substantial relation to interstate commerce. *See Frizzell Construction,* 9 S.W.3d at 83 (citing *United States v. Lopez,* 514 U.S. 549, 557059 (1995)). In this case, the Agreement containing the arbitration provision clearly is one that involves such commerce and is therefore within the scope of the FAA.

As the United States Supreme Court explained in *Southerland Corp. v. Keating*, 465 U.S. 1 (1984), the FAA not only "declared a national policy favoring arbitration," but actually "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." 465 U.S. at 10. The FAA enforces arbitration agreements according to the terms of those agreements, allowing the parties to determine the scope of arbitration.

In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the issue was whether punitive damages could be properly considered under the parties' arbitration agreement. The Court stated:

> [W]e think our decisions in *Allied-Bruce, Southland*, and *Perry*, make clear that if contracting parties agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration. Thus, the case before us comes down to what the contract has to say about the arbitrability of petitioners' claim for punitive damages.

514 U.S. at 52.

In this case, the arbitration clause provides that all issues "including the validity or enforceability of this arbitration provision or any part thereof" shall be resolved by binding arbitration. The United States Supreme Court has decided that parties may contract to arbitrate this type of dispute under the FAA even if state law would prevent arbitration. *See Mastrobuono* at 52. The Tennessee Supreme Court has also recognized this principle, where the parties contract to arbitrate under the FAA. *Frizzel Construction Company, Inc. v. Gatlinburg*, LLC., 9 S.W.3d 79 (Tenn. 1999), (holding that some issues may be excluded by law from arbitration where the parties agree to be bound by Tennessee law.) It follows that the parties may contract to arbitrate the question of the validity and enforceability of the arbitration clause itself. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (holding that courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they

did so.).  *C.f. Greentree v. Wampler*, 949 So.2d 409, 415 (Ala. 1999), where the Supreme Court of Alabama held that the issue of whether an arbitration clause is unconscionable is to be decided by a court of law and not arbitration.

Because the contract specifically states that the parties agreed to arbitrate the question of the validity or enforceability of the arbitration agreement, and because the choice of law clause states that Federal law and Delaware law apply, the parties must submit the question of arbitration to arbitration.[1]

The judgment of the Trial Court on this issue is reversed, and the cause remanded with instructions to order the parties to arbitrate the validity and enforcement of the arbitration clause.  If the arbitrator finds the clause not enforceable, the Court will proceed to resolve the disputes between the parties.  If the arbitrator determines that the arbitration clause is enforceable, then the parties will be required to arbitrate all issues covered by the arbitration agreement.

The cause is remanded, with the cost of the appeal assessed to appellee.

---

[1]As to Delaware law, the Tennessee Consumer Protection Acts states: T.C.A., §18-113(b). Any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state, or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act and related acts set forth in this title, is void as a matter of public policy. . . .