IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2006 Session

## METROPOLITAN NASHVILLE EDUCATION ASSOCIATION, ET AL. v. METROPOLITAN BOARD OF PUBLIC EDUCATION

**Direct Appeal from the Chancery Court for Davidson County**
**No. 04-391-I     Claudia Bonnyman, Chancellor**

_____

**No. M2005-00747-COA-R3-CV - Filed on September 12, 2006**

_____

The trial court awarded summary judgment to Defendant Board of Education, vacating a portion of an arbitration award that required reinstatement of Plaintiff to his high school coaching assignment. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined. HOLLY M. KIRBY, J., filed a partial dissenting opinion.

Richard L. Colbert, Nashville, Tennessee, for the appellants, Metropolitan Nashville Education Association and James Fuller.

Karl Dean, Director of Law, Department of Law of the Metropolitan Government of Nashville and Davidson County , and Jennifer L. Bozeman, Metropolitan Attorney, Nashville, Tennessee, for the appellee, The Metropolitan Board of Public Education.

### OPINION

The gravamen of this dispute is whether an arbitration clause in a collective bargaining agreement ("the agreement") between the (Nashville) Metropolitan Board of Public Education ("the Board") and the Metropolitan Nashville Education Association ("MNEA") includes arbitration of grievances regarding assignments of teachers to coaching positions.

The facts giving rise to this lawsuit are undisputed. The plaintiffs are the MNEA and James Fuller (Mr. Fuller), an Overton High School mathematics teacher and a member of the MNEA. When this dispute arose, Mr. Fuller had been teaching for twenty-one years, including eleven years at Overton High, where he was also the head coach of the boys' baseball and basketball teams. On April 9, 2002, the Board placed Mr. Fuller on administrative leave, with pay, and temporarily

assigned him to the Employee Relations Department.  A week later, he was assigned to serve as a roving substitute aide in Nashville elementary schools.  On May 7, 2002, the MNEA and Mr. Fuller filed a grievance in accordance with the agreement.  In his grievance Mr. Fuller requested transfer "back to Overton in the same teaching position as April 9, 2002."  His grievance proceeded to level two on May 21, 2002.

At the beginning of the 2002-2003 school year, Mr. Fuller reported to Overton High School and was informed by the principal that he had been transferred to Hillsboro High School to a mathematics teaching position.  On August 12, the Board responded to Mr. Fuller's grievance, denying his request not to be transferred to Hillsboro High.  Thereafter, on August 14, Mr. Fuller submitted a level three grievance.  The Board denied Mr. Fuller's level three grievance on August 26.

The MNEA submitted Mr. Fuller's grievance to arbitration in accordance with the level four procedures of the agreement.  The matter was heard by the arbitrator on March 3, 2003.  The arbitrator concluded Mr. Fuller's transfer violated the agreement and Board policy.  In his judgment, the arbitrator did not question the right of the director of schools to transfer teachers.  Rather, he found that the decision to transfer Mr. Fuller was arbitrary.  The arbitrator directed that Mr. Fuller was to be returned to "his position" at Overton High School.

The Board returned Mr. Fuller to his teaching position at Overton High for the 2003-04 school year.  However, the director of schools refused to return Mr. Fuller to his coaching position. On August 18, 2003, the staff attorney for the Tennessee Education Association ("TEA") wrote to the arbitrator seeking clarification of the arbitrator's award and requesting definition of the scope of the "position" to which Mr. Fuller was to be reinstated.  The arbitrator responded on August 25, stating:

> Not knowing what problem(s) has been encountered in the implementation of this award, it is difficult to know how to clarify it, but I will try.

> Mr. Fuller was employed at Overton in a teaching/coaching position prior to his administrative transfer - he should be transferred back to that position, or one that is substantially the same.  It must be recognized that any teacher's schedule is subject to the needs of the particular school, the needs of the students, etc., and that these needs change from year to year.  Mr. Fuller had some school seniority at Overton and this should be reinstated for whatever purpose it is used.

The TEA wrote again to the arbitrator on October 9, seeking further clarification.  The TEA stated:

> At the time of this grievance, Jim Fuller was a mathematics teacher, and a basketball and baseball coach.  As previously noted, Jim Fuller has been returned to a teaching position at Overton High School.  The Metro Schools have refused to return him,

however, to the coaching positions that he held at the time that the grievance was filed. It is our position that Metro Schools have failed to comply with your direction regarding the implementation of this award. Please advise us as to your intent in this matter.

On October 27, the arbitrator again clarified his order, stating:

> The award directed that Grievant be returned to his position at Overton, which had previously been that of coaching and teaching higher mathematics. Anything less than that is a failure to comply with the award. . . . Good faith dealing requires honoring this agreement.

On November 17, the Board, responded in writing to the TEA's assertion that compliance with the arbitrator's award required reinstating Mr. Fuller to his coaching assignment. The Board asserted that the arbitrator exceeding his authority in his award to Mr. Fuller. It stated: "Nowhere in the Educational Agreement does it provide that MNPS has negotiated away the administration's authority to determine what subjects a teacher will teach or which teachers will be appointed as coaches." The Board refused to return Mr. Fuller to his coaching assignment.

In February 2004, Mr. Fuller filed a complaint in the Chancery Court of Davidson County seeking enforcement of the arbitrator's award. In his complaint, Mr. Fuller asserted that the Boards's failure to comply with the arbitration award was a breach of contract and unlawful under Tennessee Code Annotated § 49-5-609(a)(1) and (8). He further sought relief under Tennessee Code Annotated § 49-5-510, asserting his transfer had been arbitrary and capricious and not necessary to the efficient operation of the school system. The parties filed cross motions for summary judgment, and the trial court awarded summary judgment to the Board in December 2004. Mr. Fuller filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Fuller presents the following issues for our review:

(1)     Did the Chancellor err in concluding that she was empowered to substitute her construction of the parties' contract for the arbitrator's construction of that contract?

(2)     Did the Chancellor err in substituting her judgment for that of the arbitrator regarding the appropriate make-whole remedy for the Board of Education's breach of contract?

(3)     Did the Chancellor err in granting summary judgment to the Board of Education on Fuller's claim under [Tennessee Code Annotated] § 49-5-510?

-3-

The dispositive issue on appeal, as we perceive it, however, is whether the trial court erred by determining that the arbitrator exceeded his authority when he ordered that Mr. Fuller be returned to his coaching assignment at Overton High.

### *Standard of Review*

A trial court's award of summary judgment presents a question of law which we review *de novo* with no presumption of correctness. *E.g., Marion County Bd. of Educ. v. Marion County Educ. Ass'n*, 86 S.W.3d 202, 206 (Tenn. Ct. App. 2001). Because the material facts in this case are not in dispute, our review requires us to interpret the applicable statutes and the contract between the parties. These are questions of law which we review *de novo* with no presumption of correctness to the determinations of the trial court. *Id.*

Whether the arbitrator exceeded his authority requires, as an initial matter, a determination of whether Mr. Fuller's grievance regarding his coaching assignment is within the scope of the arbitration provisions of the collective bargaining agreement. The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. *Id.* at n.5. Courts generally apply these "ordinary state-law principles" to determine whether parties agreed to submit disputes to arbitration. *Frizzell*, 9 S.W.3d at 85.

### *Analysis*

In their briefs to this Court, the parties address at considerable length the standard of review to be applied by the trial court when reviewing an award made pursuant to an agreement providing for final and binding arbitration under the Education Act as codified in title 49 of the Code. The parties assert, and the trial court determined, that, under Tennessee Code Annotated § 49-5-602(1), arbitration, defined as "the process of determination of disputed matters by submission to private unofficial persons selected for a purpose, and in a manner consistent with this part," is not governed by the provisions of title 29, chapter 5, of the Code.[1] The trial court accordingly applied the common law to resolve the arbitrated dispute. Citing *Bright v. Ford*, 58 Tenn. (11 Heisk.) 252 (1872), the trial court determined that it had jurisdiction to set the arbitrator's award aside upon a finding of fraud, mistake, accident, or corrupt or oppressive conduct of the parties or arbitrator. The trial court determined that the agreement in this case does not apply to Mr. Fuller's coaching position. It held:

---

[1]Title 29, chapter 5, governs arbitration generally and includes the Uniform Arbitration Act as enacted in Tennessee.

-4-

The Defendant carried its burden to show that the coaching issue is one the parties omitted from their Contract. Mr. Fuller's coaching contract was not renewed during the 2003-2004 school year. Neither this Court nor the arbitrator is empowered to create a contract where one does not exist.

Mr. Fuller asserts that the trial court erred by applying the common law review of arbitrated disputes to this case. He contends that, under Tennessee Code Annotated § 49-5-612(c), the arbitrator's award was final and binding and that the trial court erred by substituting its judgment for that of the arbitrator.[2] Mr. Fuller's argument, as we understand it, is that the courts simply have no role to play in the dispute resolution process other than to enforce the determination of the arbitrator where the agreement calls for final, binding arbitration. He cites *Rhea-Dayton Education Association v. Rhea County Board of Education*, No. 03A01-9401-CH-00021, 1994 WL 413180 (Tenn. Ct. App. Aug. 9, 1994)(*no perm. app. filed*), and *Marion County Board of Education v. Marion County Education Association*, 86 S.W.3d 202, 213 n.14 (Tenn. Ct. App. 2001) in support of this assertion.

The Board, on the other hand, asserts the trial court applied the appropriate standard of review. It asserts the arbitrator's award was not "good upon its face" with respect to the coaching position, and that the award "clearly demonstrated a 'mistake of fact' that was perpetuated by the [MNEA and Jim Fuller and of which they seek to take advantage]." The Board contends that Mr.

---

[2]Tennessee Code Annotated § 49-5-612 provides:

(a) The scope of a memorandum of agreement shall extend to all matters negotiated between the board of education and the professional employees' organization; provided, that the scope of such agreement shall not include proposals contrary to:
      (1) Federal or state law or applicable municipal charter;
      (2) Professional employee rights defined in this part; and
      (3) Board of education rights contained in this title.
      (b) When agreement is reached by the representatives of the board of education and the recognized professional employees' organization, they shall jointly prepare a memorandum of understanding, and, within fourteen (14) calendar days, present it to their appropriate governing authorities for ratification or rejection. These governing authorities, as soon as practical, shall consider the memorandum and take appropriate action. If either governing authority rejects or modifies any part of a proposed memorandum, the matter shall be returned to the parties for further negotiation. The board of education may enter into such memorandum for a period not in excess of three (3) years. Any items negotiated by a board of education and a professional employees' organization which require funding shall not be considered binding until such time as the body empowered to appropriate the funds has approved such appropriation. In the event the amount of funds appropriated is less than the amount negotiated, the board or its representatives and the professional employees' organization or its representatives shall renegotiate an agreement within the amount of funds appropriated.
      (c) A board of education and a recognized professional employees' organization who enter into an agreement covering terms and conditions of professional service and/or other matters of mutual concern may include in such agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application or violation of such agreement.

Tenn. Code Ann. § 49-5-612 (2002).

-5-

Fuller's 1973 hire letter states that he was hired as a "teacher," and not as a "teacher/coach," and that, throughout the grievance process, Mr. Fuller sought a transfer back to Overton High in a "teaching position." The Board asserts that the agreement between it and the MNEA has no provisions governing coaches, and that the definition of "teacher" in the agreement does not include coaches.

Although § 49-5-602 removed arbitration under the Educational Professional Negotiations Act as codified in part 6 from the provisions of title 29, we cannot agree with Mr. Fuller that the section limits the trial court's function to enforcing an arbitrator's award where the agreement provides that arbitration is final and binding. The statutory scheme of title 49 anticipates, at minimum, judicial review of the permissible scope of the agreement. The Code provides:

> The scope of a memorandum of agreement shall extend to all matters negotiated between the board of education and the professional employees' organization; provided, that the scope of such agreement shall not include proposals contrary to:
> (1) Federal or state law or applicable municipal charter;
> (2) Professional employee rights defined in this part; and
> (3) Board of education rights contained in this title.

Tenn. Code Ann. § 49-5-612(a)(2002). In *Marion County Board of Education*, for example, this Court held that, because Tennessee Code Annotated § 49-2-303(a)(1) specifically provides that the employment of a principal is within the province of the director of schools, any agreement or interpretation thereof purported to remove that authority from the director of schools was beyond the permissible scope of the agreement. *Marion County Bd. of Ed.*, 86 S.W.3d at 214.

As Mr. Fuller asserts, the *Marion County Board of Education* court recognized that "courts are limited in addressing the merits of a grievance that is subject to an arbitration clause." *Id.* at 213 n.14. However, the court noted the question of law before it related to neither the merits of the grievance nor to whether the grievance was subject to arbitration under the agreement. *Id.* at 214. Rather, the issue before the court was whether the choice of who would be principal could properly be within the scope of an arbitration agreement. The court specifically declined to address whether an agreement "can impose procedural requirements." *Id.* at 216. Accordingly, an arbitrator's award under a collective bargaining agreement that permitted an arbitrator to determine the choice of principal would not be enforceable, a "final and binding" clause notwithstanding.

We also disagree with the Board, however, that arbitration pursuant to an agreement are subject to common-law judicial review of arbitrated agreements. The complexity of both title 49 and title 29 belie such a position. In *Rhea-Dayton Education Association*, for example this court utilized the courts' reasoning of arbitration disputes brought pursuant to title 29 to emphasize that "[t]he courts are without jurisdiction to review the merits of a grievance or arbitrator's award." *Rhea-Dayton Educ. Ass'n*, 1994 WL 413180, at *4 (quoting *Mechanics Universal Joint Div. v. Fooshee*, 354 S.W.2d 59, 60 (Tenn. 1962). We further noted that the "interpretation of the collective bargaining agreement is a question for the arbitrator." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593 (1960)). We observed, however, that "[a]n arbitrator is

confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice . . . his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id. (*quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593 (1960)). In *Rhea-Dayton Education Association*, we held that the disputed issues in that case were within the scope of the arbitration agreement and, therefore, were to be resolved by the arbitrator's construction and interpretation of the contract.

Thus, the question of the applicability of the arbitration agreement is properly before the court as a "gateway" issue. In *Thompson v. Terminix*, this Court recently stated:

> the trial court must determine certain "gateway" issues, including matters "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). Thus, issues within the trial court's duty as gatekeeper are limited to the "validity of the arbitration clause . . . [and] its applicability to the underlying dispute between the parties." *Id.* These gateway issues fall within the "certain limited circumstances, [where] courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and un mistakabl[e]' evidence to the contrary)." *Id. (*quoting *AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide." *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002)). Further, any doubt about the "scope of arbitrable issues" should be resolved " 'in favor of arbitration.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

*Thompson v. Terminix Int'l Co.*, No. M2005-02708-COA-R3-CV, 2006 WL 2380598, at \*4 (Tenn. Ct. App. Aug. 16, 2006). We believe this analysis is applicable here.

We next turn to whether the trial court erred in determining the arbitration clause was inapplicable to Mr. Fuller's coaching assignment. The Board does not challenge the arbitrator's decision with respect to Mr. Fuller's position as a teacher of mathematics. Rather, it asserts that the agreement is not applicable to coaches. It asserts that coaching positions are governed by Tennessee Code Annotated § 49-2-301(b)(1)(FF), which provides:

> All persons who are employed in a position for which no teaching license is required shall be hired on a year-to-year contract. The director shall provide a person who is

employed in such a position fifteen (15) days notice of nonrenewal of the contract before the end of the contract period[.][3]

Tenn. Code Ann. § 49-2-301(b)(1)(FF)(2002)

The Board also asserts, however, that Mr. Fuller was not employed as teacher/coach, but was hired as a teacher. Indeed, under the terms of the agreement, Mr. Fuller's coaching assignment was a "supplemental paying position." Article IV, paragraph D of the agreement provides:

A master list of all supplement-paying positions in the local school shall be maintained and shall be available from the Assistant Superintendent for Human Resources. An attempt will be made to broadly distribute supplement-paying positions among the members of a given faculty.

Article VIII, paragraph G of the agreement includes a list of supplemental positions for which "an annual supplement is paid to certain teachers . . . ." The basketball coach and baseball coach positions are listed among the these supplemental positions. Paragraph G also specifies the additional percentage of salary to be paid to those teachers as a supplement.

Whether the agreement is applicable to coaches not hired as teachers is irrelevant here. The Board's assertion that Mr. Fuller was not hired as a teacher/coach is also irrelevant. Mr. Fuller was hired as a teacher; his position as coach was supplemental as provided by the terms of the agreement. Finally, we find the Board's contention that Mr. Fuller's grievance did not pertain to his coaching position to be somewhat disingenuous where this dispute arose not from Mr. Fuller's performance as a mathematics teacher, but on alleged mishandling of athletic funds.

We hold that, under the collective bargaining agreement, Mr. Fuller's entire dispute with the Board was subject to arbitration. The interpretation and application of the agreement with respect to the supplemental coaching position was within the province of the arbitrator, and his award was final and binding. Accordingly, the trial court erred by awarding summary judgment to the Board.

As the arbitrator observed, however, the needs of a school and its students are not static. Additionally, the agreement clearly does not forever guarantee Mr. Fuller the supplemental coaching positions. The issue addressed at arbitration, moreover, was not the right of the director of schools to transfer a teacher, but the process by which Mr. Fuller was removed from his teaching and coaching position and transferred out of Overton High. The arbitrator's ruling was predicated on the arbitrariness of the decisions.

---

[3]Assuming, as the Board asserts, Mr. Fuller's supplemental coaching position was governed by an unwritten contract, the record does not indicate the contract period or that Mr. Fuller was given fifteen days notice of nonrenewal before the end of that period.

Of course, Mr. Fuller cannot be retroactively reinstated to his coaching position for the 2003-2004 school year. Additionally, this Court is not insensitive to the fact that Mr. Fuller has not coached at Overton for a number of years, and that the baseball and basketball programs have evolved over time. Further, as the arbitrator observed and as the agreement and title 49 emphasize, the welfare of the children of the school system is the paramount consideration. Accordingly, we reverse summary judgment in favor of the Board and remand to the trial court with instructions to refer the matter to the arbitrator to fashion an appropriate remedy.

### *Holding*

The judgment of the trial court awarding summary judgment to the Board is reversed in its entirety. In light of our disposition of this matter, we decline to address Mr. Fuller's assertion that the trial court erred under Tennessee Code Annotated § 49-5-510. This matter is remanded to the trial court with instructions to refer the matter of remedy to the arbitrator. Costs of this appeal are taxed to the Appellee, Metropolitan Board of Public Education.

_____
DAVID R. FARMER, JUDGE