IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 23, 2010 Session

# BREATH OF LIFE CHRISTIAN CHURCH v. TRAVELERS INSURANCE COMPANY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-07-0451      Arnold B. Goldin, Chancellor**

_____

**No. W2009-00284-COA-R3-CV - Filed March 26, 2010**

_____

The trial court awarded summary judgment to Defendant surety in this breach of contract action.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Stacy Alane Clinton and Addie M. Burks, Memphis, Tennessee, for the appellant, Breath of Life Christian Church.

Elizabeth B. Stengel, Memphis, Tennessee, for the appellee, Travelers Insurance Company.

## MEMORANDUM OPINION[1]

In March 2007, Breath of Life Christian Church ("Breath of Life") filed a complaint alleging breach of contract against Travelers Insurance Company ("Travelers") in the Chancery Court for Shelby County.  In its complaint, Breath of Life alleged that Travelers

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

had failed to perform its obligations as surety under a performance bond issued to Bricks, Inc. ("Bricks"), a general contractor with whom Breath of Life had contracted to construct its worship center. Breath of Life asserted that Bricks had failed to comply with the terms of the contract for construction and that, as surety for Bricks, it was Travelers' legal obligation "to compensate or complete the contract[.]" Breath of Life alleged that Travelers had failed to comply with its obligations under the performance bond that was issued in October 2003, and prayed for damages in the amount of $707,000. Breath of Life attached its contract with Bricks and the performance bond issued by Travelers to its complaint. It also attached correspondence from Travelers to Breath of Life dated January 2007, in which Travelers acknowledged receipt of Breath of Life's December 2006 correspondence advising it that "[w]hile the building was erected, there are several matters which are still incomplete and several other problems relating to this construction problem" and stated that it was conducting an investigation under reservation of rights. Breath of Life also attached copies of relevant documents filed in an on-going lawsuit between itself and Bricks to its complaint against Travelers.

Travelers answered in May 2007 and asserted twenty-five defenses to Breath of Life's complaint. Travelers asserted, *inter alia*, that Bricks had not defaulted on the construction contract and that Breath of Life had failed to comply with the terms and conditions of the performance bond. Travelers stated that it therefore was not liable under the terms of the bond. Following discovery, Travelers moved for summary judgment in December 2007. In its motion, Travelers asserted that there were no disputed issues of material fact and that Breath of Life had failed to comply with the terms and conditions of the performance bond where it "did not comply with the protocol required to perfect a claim against the performance bond."

The trial court heard oral argument on Travelers' motion in May 2008, and awarded summary judgment to Travelers in June 2008. In its order, the trial court found that the material facts were not disputed; that the language of the performance bond "unambiguously sets out a process that an owner must satisfy in order for the surety to be liable under the bond"; and that Breath of Life had not satisfied that process. The trial court further stated:

> During oral argument, counsel for [Breath of Life] argued that the notice requirement in the performance bond was not an absolute condition precedent to trigger Travelers['] obligations. [Breath of Life] urged the court to find that it substantially complied with the notice requirement and, therefore, Travelers was liable. The court would entertain the notion that [Breath of Life] substantially complied with the notice requirements of the performance bond, but, as indicated above, there are no facts to support this finding.

The trial court observed that, although Breath of Life contended that Travelers was not prejudiced by its failure to follow the process delineated in the bond, Travelers' position was that the process was designed to minimize liability. The trial court also noted that Breath of Life conceded that "the purpose of the provisions in the Performance bond was . . . not to be mere technical steps, but rather to insure that the Surety was notified of any issues and provided with an opportunity to assert its rights to have the project completed." The trial court found that "there [were] no statements of fact that indicate that [Breath of Life] found Bricks in default. Bricks was not fired nor did [Breath of Life] claim the project was incomplete."

Breath of Life filed a motion to alter or amend or to set aside the judgment in July 2008. The trial court denied the motion on December 18, 2008. On December 24, 2008, Breath of Life filed a motion to consolidate its appeal of the present case with its appeal of *Sanders v. Holloway, et. al.,* CH 05-0577-2, litigation arising from a materialman's lien in which Breath of Life cross-claimed against Bricks and alleged breach of contract. The trial court denied the motion in March 2009. Breath of Life filed a notice of appeal to this Court on January 16, 2009, and oral argument was heard in February 2010.

On appeal, Breath of Life does not contend that it complied with the precisely delineated notice and procedural mechanisms of the performance bond. Rather, in its brief, it argues that Travelers "knew or should have known that [Breath of Life] declared Bricks, Inc. to be in default and intended to seek payment to complete the project as permitted by the Surety's bond." It submits that its failure to follow the strict language of the bond was merely a technical violation that did not prejudice Travelers, and that the bond was "ambiguous as to whether the notice provision would apply under the circumstances in that a lawsuit had already been filed against it by an agent of the Appellee's insured." Breath of Life's argument, as we perceive it, is that the trial court erred by awarding summary judgment to Travelers because there is a genuine issue of material fact regarding whether Travelers had notice of the dispute between Breath of Life and Bricks and regarding whether Travelers was prejudiced by Breath of Life's failure to follow the precise language of the bond's claim protocol.

We begin our discussion by noting that the interpretation of a contract is a matter of law that we review *de novo* on the record, with no presumption of correctness for the determination of the trial court. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*,

45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

In this case, we agree with the trial court that the relevant portions of the performance bond are not ambiguous. Sections three, four, and five of the bond provide:

3. If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4. When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions: 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agent or through independent

contractors; or

4.3   Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4   Waive its rights to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefore to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefore.

5.  If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on the Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the surety proceeds as provided in Subparagraph 4.4 and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

The bond unambiguously sets-forth the conditions under which Travelers' obligations as surety would arise.  We agree with Breath of Life that a mere technical violation of the protocol might not relieve Travelers of its obligations in all circumstances.  In this case, however, we must disagree that section three of the bond is merely a notice provision that should be dispensed with where Travelers had some indication of difficulties between Breath

of Life and Bricks. Rather, section three also provides a mediation mechanism that seeks to avoid default.

Additionally, the on-going litigation between Breath of Life and Bricks arose from a mechanics and materialman's lien filed by a subcontractor against Breath of Life and Bricks, and subsequent cross-claims asserting breach of contract by Breath of Life and Bricks. Breath of Life asserts Travelers had actual notice of the litigation in April 2007, when Breath of Life's legal counsel contacted insurance agent Richard Luther Powell (Mr. Powell) regarding bonding off the lien against it. Breath of Life contends that Mr. Powell's deposition testimony demonstrates that Travelers had actual notice of the litigation between Breath of Life and Bricks.

In his deposition, Mr. Powell stated that he acts as an agent for several companies, including Travelers, that he received a letter from counsel for Breath of Life on April 7, 2005, and that he executed release of lien bonds for Breath of Life and Bricks shortly thereafter. Mr. Powell stated that he approached Travelers to ask them to provide a bond to Breath of Life, that Travelers refused to provide a bond for Breath of Life, and that Travelers agreed to provide a bond to Bricks. Mr. Powell stated, "[n]o surety company likes to execute[] unsupported release of lien bonds, and Travelers was - - was okay with supporting their contractor, but they did not want to provide the bond for the church."

Contrary to Breath of Life's assertion, Mr. Powell's deposition does not create an issue of material fact with respect to whether Travelers had actual notice that Breath of Life had a claim against Bricks or that it was considering declaring Bricks to be in default. It demonstrates only that Breath of Life's legal counsel contacted an independent insurance agent, who requested a "release of lien" bond from Travelers. The materialman's lien, moreover, was filed against both Breath of Life and Bricks. *Sanders v. Holloway*, No. W2008-02566-COA-R3-CV, 2009 WL 4642597, at *1 (Tenn. Ct. App. Dec. 9, 2009) (*no perm. app. filed*).

There is nothing in the record to suggest that Breath of Life informed Travelers that it was declaring Bricks to be in default and making a claim on the performance bond until December 2006. Additionally, it did not afford Travelers the opportunity to exercise the options contained in section 4 of the bond. Even if were we to assume that Bricks was in default of the construction contract and that Travelers had actual notice of the litigation between Breath of Life and Bricks and waived the notice and conference provisions, there is nothing in the record to suggest that Travelers waived its rights under section 4 and agreed to be liable for whatever amounts Breath of Life unilaterally determined were necessary to complete the construction.

We must disagree that Breath of Life's failure to follow the protocol set-forth in the performance bond was merely a technical violation of the formal notice requirements in this case. As noted above, Breath of Life cross-claimed against Bricks in April 2005 after a materialman's lien was filed against both Breath of Life and Bricks. Eight months later, on December 20, 2006, it informed Travelers that "[w]hile the building was erected, there [were] several matters which [were] still incomplete and several other problems relating to this construction project[,]" and that it was making a claim on the bond. In its December 2006 correspondence, Breath of Life also stated that it believed Bricks had notified Travelers of the pending litigation. Despite the unambiguous provisions of the performance bond, Breath of Life simply did nothing to contact Travelers regarding its dispute with Bricks until eight months after litigation was commenced between it and Bricks. Additionally, Breath of Life failed to provide Travelers with the options delineated in section 4 of the bond. As far as we can determine from the record, Bricks has not been found to be in default of the construction contract. *See Sanders v. Holloway, et. al.*, No. W2008-02566-COA-R3-CV, 2009 WL 4642597 (Tenn. Ct. App. Dec. 9, 2009). Accordingly, whether Travelers would be liable for undetermined damages should Bricks be found to be in default by the trial court is not properly before us at this time.

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Breath of Life Christian Church, and its surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE