# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 19, 2010 Session

# HEALTHMART USA, LLC ET AL. v. DIRECTORY ASSISTANTS, INC.

**Appeal from the Chancery Court for Williamson County**
**No. 35721     James G. Martin, III, Judge**

---

**No. M2010-00880-COA-R3-CV - Filed April 6, 2011**

---

In a dispute over the enforceability of an arbitration provision in a consulting contract, the trial court found the provision ambiguous and denied the appellant's motion to dismiss or to compel arbitration. We find that the provision is not ambiguous. We remand for a ruling on the condition precedent to arbitration: whether the appellant made a good faith effort to come to a mutual agreement before unilaterally selecting an arbitration service, location, and choice of law forum. We have also concluded that should the parties reach arbitration, the issue of fraud in the inducement is arbitrable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Cynthia Sherwood Parson McKenzie and Lyndsay Claire Smith Hyde, Nashville, Tennessee, for the appellant, Directory Assistants, Inc.

Phillip B. Jones, Nashville, Tennessee, for the appellees, Healthmart USA, LLC and Gregg Lawrence.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Directory Assistants, Inc. ("DAI"), a Connecticut corporation, entered into a "consulting contract" with Healthmart USA, LLC, an insurance agency in Tennessee, on March 3, 2008, to help Healthmart save on its yellow page advertising. Gregg Lawrence is

the owner of Healthmart.[1]  At issue is the following arbitration provision contained in the contract:

> Should a dispute arise we both agree to try and resolve it with the other party. If we cannot, we both want to resolve it quickly and cost effectively. To achieve that, we both agree to resolve any dispute arising out of or relating to this contract through confidential binding arbitration and agree to mutually choose an arbitration service, location and choice of law forum. If we are unable to come to a mutual agreement, or if one of us refuses to participate in choosing, the party filing a demand will have the right to make the choices unilaterally, as long as the filing party made a good faith effort to come to a mutual agreement, and the non-choosing/non-participating party expressly consents to and waives any and all objections to the choices made.

A dispute arose between the parties. According to the contract, DAI represented that it could achieve savings on Healthmart's yellow page costs. DAI was to be compensated by receiving a percentage of those savings. In April 2008, Healthmart chose not to renew its Davidson County yellow page ad, and DAI therefore did not achieve any savings for Healthmart. Healthmart understood that it owed DAI nothing. However, DAI issued a bill to Healthmart demanding payment of $20,930.70, which Healthmart disputed. On February 27, 2009, DAI filed an arbitration complaint with the American Dispute Resolution Center in Connecticut. In a letter dated March 20, 2009, Healthmart notified the center that there had been no mutual decision and no substantive negotiations to choose an arbitration service, location, or choice of law forum, as stipulated in the arbitration clause of the parties' consulting contract. In a letter dated March 23, 2009, the ADR center notified Healthmart that the arbitration "must proceed" absent a court order enjoining it and that Healthmart should select an arbitrator "today" or one would be appointed.

On March 25, 2009, the plaintiffs filed a lawsuit in Williamson County Chancery Court, seeking a declaratory judgment and civil damages under the Tennessee Consumer Protection Act. The plaintiffs obtained a temporary restraining order preventing continuation of the arbitration.[2]

---

[1] The plaintiffs insist that Mr. Lawrence did not sign the contract in his individual capacity and should not be compelled to defend an arbitration proceeding in Connecticut. DAI responds that because Mr. Lawrence is a plaintiff in the chancery court suit, he is necessarily a party to its motion seeking to compel arbitration. DAI confirmed at oral argument before this court that it was only seeking to compel Healthmart to arbitrate, not Mr. Lawrence.

[2] On April 22, 2009, DAI filed a notice of removal to federal court. The plaintiffs filed a motion to
(continued...)

DAI filed a motion to dismiss or, in the alternative, to stay the action and compel arbitration. A hearing was held on March 29, 2010. The trial court denied DAI's motions, finding the last sentence of the arbitration provision "ambiguous and subject to multiple interpretations." At the hearing, the parties debated the meaning of the final clause in the last sentence of the arbitration provision: "and the non-choosing/non-participating party expressly consents to and waives any and all objections to the choices made." DAI insisted that the final clause of the last sentence is not a requirement, but means the non-choosing/non-participating party consents to and waives all objections to the choices made by virtue of not participating in the selection process. However, the trial judge concluded that the last sentence could be read to mean the party filing a demand cannot make the choices unilaterally *unless* the non-choosing/non-participating party expressly consents to and waives all objections to the choices made. The court denied the defendant's motion to dismiss, denied its request that the plaintiffs' civil claims be stayed, and denied its request that the plaintiffs be compelled to arbitrate the claims.

On April 19, 2010, DAI filed this appeal. DAI also filed a motion in chancery court to stay the matter pending appeal. The court granted DAI's motion to stay on May 29, 2010.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). This case turns on the interpretation of a contract, which is a question of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). Therefore, our review is de novo with no presumption of correctness. *Id.*; Tenn. R. App. P. 13(d).

In interpreting a contract, we seek to ascertain the intent of the parties from the language of the contract; in so doing, we must apply to those words their usual, natural, and ordinary meaning. *Staubach Retail Servs.-SE, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005). If the terms of a contract are ambiguous, a court must determine the intent of the parties as expressed in the four corners of the contract. *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987). The parol evidence rule generally prohibits the use of extrinsic evidence to alter or contradict the plain meaning of an unambiguous written contract. *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 558 (Tenn. Ct. App. 1991); *Stamp v. Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 457 (Tenn. Ct. App. 1990). To aid the court's discernment of the parties' intention,

[2](...continued)
have the case remanded back to chancery court, which was granted on the basis that the defendants failed to establish that the amount in controversy exceeds $75,000.

however, the parol evidence rule does not prohibit the court from considering the circumstances surrounding the formation of the contract, the business to which the contract relates, and the construction placed upon the contract by the parties in carrying it out. *Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000); *Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997); *Richland Country Club*, 832 S.W.2d at 558; *Coble Sys., Inc. v. Gifford*, 627 S.W.2d 359, 362 (Tenn. Ct. App. 1981). Moreover, any "[a]mbiguous language in a contract is construed against the drafter." *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989).

ANALYSIS

Enforceability of the Arbitration Provision

The issue on appeal is whether the trial court erred in denying DAI's motion to dismiss, or in the alternative, failing to compel arbitration.

DAI insists that the contract between the parties requires them to arbitrate any and all disputes because the dispute involves interstate commerce and is therefore governed by the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 2. The FAA establishes "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Under the FAA, an agreement to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress has "mandated the enforcement of arbitration agreements." *Southland Corp.*, 465 U.S. at 10. This policy requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The parties expressly agreed to arbitration. The question is whether the arbitration provision is ambiguous and if so, what effect that has on the enforcement of the provision. DAI first notes that the trial court only found the provision selecting the arbitration service, location, and choice of law forum ambiguous, and such a finding does not render the entire arbitration provision invalid. Irrespective of the trial court's ruling, DAI argues that the arbitration provision is not ambiguous. Healthmart, on the other hand, alleges that the contract is an "agreement to agree" and is too vague to be enforceable because it fails to identify an arbitration service, location, or choice of law. Healthmart cites *Huber v. Calloway*, No. M2005-00897-COA-R3-CV, 2007 WL 2089753 (Tenn. Ct. App. July 12,

-4-

2007), in support of its position that such contracts are unenforceable. *Huber* instructs as follows:

> The difference between a valid contract and an unenforceable agreement requires consideration of two related concepts: an expression of the parties' intent to be bound, and the definitiveness with which they state their terms. The courts' initial task is to determine whether the written contract is ambiguous. If the contract's language is plain and complete, the contracting parties' intentions must be gathered from the language of the contract alone. Accordingly, when the parties have reduced their contract to writing, their intentions should be contained in the four corners of the contract, and the contracting parties' rights and obligations should be governed by their written contract.
>
> Intent is revealed through an examination of the language chosen by the parties. This standard is an objective one, and the courts must determine intent by examining the meaning that a reasonable person would have derived from the words had such person been in the same situation as that of a party to the contract. The rules of contract construction come into play only when the court determines that the contract is ambiguous or incomplete. Contractual ambiguity arises only when contractual provisions may reasonably be read to have more than one meaning. It does not arise simply because the contracting parties interpret their contract differently. Thus, in the absence of fraud or mistake, the courts should construe unambiguous written contracts as they find them.
>
> Contracts that leave material terms open for further negotiations are generally too vague to be enforceable. However, the law does not favor the destruction of contracts, and a contract that lacks definitiveness of terms will be enforced if the terms can be reasonably ascertained from the language of the contract. . . .
>
> Contract provisions should be considered in the context of the entire contract. In addition, the language used in a contract should be given its natural and ordinary meaning. The courts should avoid strained constructions of contractual language that create contractual ambiguities where none, in fact, exist.

*Id.* at *3-4 (citations omitted).

We do not think the provision at issue may reasonably be read to have more than one meaning. We interpret the provision to provide that if the parties are unable to come to a mutual agreement or if one party refuses to participate in choosing an arbitration service, location, and choice of law forum, then the non-participating party consents to and waives any and all objections to the choices made, as long as the party filing for arbitration made a good faith effort to come to a mutual agreement. Interpreting the provision in the way that Healthmart suggests would put two parts of the provision at odds—allowing the filing party to act unilaterally but requiring the non-participating party to waive all objections to the choices made. Such a requirement would preclude unilateral action.

Healthmart, relying on *Huber*, claims that the agreement is unenforceable because it does not designate an arbitration service, location, or choice of law. "Contracts that leave material terms open for further negotiations are generally too vague to be enforceable." *Id.* at *4. However, the unspecified material term in *Huber* was the price of property, which was to be "mutually agreed upon" based on an independent appraisal at the time of sale. *Id.* at *1. The court called such an agreement to negotiate a price in the future "a classic example of the 'agreement to agree.'" *Id.* at *5. We do not consider *Huber* instructive in the context of a provision that does not contain an agreement to negotiate price in the future. Healthmart has cited no case law in support of its claim that the selection of arbitration particulars constitutes an unenforceable agreement to agree.[3]

Having decided that the arbitration in the present case is enforceable, we have examined the record to determine whether the party filing a demand, DAI, made a good faith effort to come to a mutual agreement. In its appellate brief, Healthmart gives the following account of DAI's efforts to reach an agreement:

> [I]n late 2008, [DAI] tendered a bill to Healthmart demanding payment of $20,930.70. Healthmart notified [DAI] that it disputed the bill. [DAI] ignored that notification.
>
> In early 2009 [DAI] threatened collection actions against Healthmart. On February 26, 2009 the parties exchanged emails and Healthmart attempted

---

[3] Indeed, this court has upheld a dispute resolution provision that failed to specify particulars and stated only that disputes "shall be submitted either to a dispute revolution entity, or to a single arbitrator selected by the American Arbitration Association, as the parties shall agree." *Urology Assocs., P.C. v. CIGNA Healthcare of Tenn., Inc.*, No. M2001-02252-COA-R3-CV, 2002 WL 31302922, at *1 (Tenn. Ct. App. Oct. 11, 2002). The trial court found that the provision was too "imprecise" and declined to enforce it, noting that it would have the effect of requiring parties that had failed to reach a resolution on their dispute to agree to one of two methods to resolve the dispute. *Id.* at *4. Nevertheless, the appellate court overruled the trial court and held that the provision constituted an enforceable agreement to arbitrate. *Id.* at *8.

to set up a telephone conference for the following week to address the dispute. [DAI] ignored that overture. Instead, [DAI] filed an arbitration proceeding in Connecticut on February 27, 2009. . . .

Healthmart's counsel notified the [American Dispute Resolution Center, the arbitration service that DAI selected,] on March 20, 2009 that Healthmart disputed the enforceability of the entire contract and more importantly, that the attempt to arbitrate in Connecticut with the ADR was improper, given the terms of the consulting agreement. . . .

By letter dated Monday, March 23, 2009, the ADR advised Healthmart (and its Owner) that the Connecticut arbitration "must proceed" absent entry of a court order enjoining it. The ADR also advised Healthmart that it had only one (1) day to select an arbitrator—otherwise, an arbitrator would be selected unilaterally.

The record contains copies of the March 20 and March 23 letters referred to above, as well as a copy of a "Demand for Arbitration Form" dated February 27, 2009, which lists DAI as the claimant and Healthmart as the respondent. The record also contains a copy of a letter, dated March 11, 2009, from the ADR Center to both parties confirming receipt of DAI's demand for arbitration.

DAI offers a different account of the parties' efforts to reach an agreement. In a court filing titled "Claimant's Response to Respondents' Letter of March 20, 2009," which was entered in the record on March 26, 2009, DAI claims to have sent Healthmart "two different emails asking them to participate in mutually choosing the arbitration choices." One email, sent by David Ford of DAI to Gregg Lawrence of Healthmart on January 15, 2009, allegedly stated: "Per the arbitration agreement, please let me know where you feel we should arbitrate, what service we should use and what choice of law you feel should apply. If we do not hear from you by January 22, 2009, we will make the choices unilaterally." A second email sent by David Ford to Gregg Lawrence on February 13, 2009 allegedly stated the following:

We cannot make you respond to this. However, we will proceed with an arbitration against you personally, as we have not been able to find any corporate entity named Healthmart usa.. [sic] We will have seventeen years to collect on the judgment.

If you don't try and work with us to resolve this, you are going to force us to take that route. If we do not hear from you by March 1, 2009, we will file a demand for arbitration.

Would you help us avoid this by responding?

In the same March 26, 2009 filing, DAI claims that Healthmart responded to "our email,"[4] but did "not even try to choose mutually agreeable arbitration particulars."

Without a full account of the parties' correspondence and negotiations, the record is unclear at this stage whether DAI made a good faith effort to come to a mutual agreement. This determination pretermits other issues at this point. We remand for a ruling on this condition precedent to arbitration.

Arbitrability of Healthmart's Fraudulent Inducement Claim

Healthmart also argues that because it has asserted a claim for fraud in the inducement in the formation of the contract,[5] it cannot be bound by an arbitration clause in a contract that is subject to rescission. Thus, the parties raise another issue on appeal—whether Healthmart's claim for fraud in the inducement is arbitrable. We note that this issue may be moot if the trial court determines that DAI did not exercise a good faith effort to come to a mutual agreement regarding arbitration service, location, and choice of law. However, in the interest of judicial economy, we have determined that should the parties reach arbitration, the issue of fraud in the inducement is arbitrable.

We begin our analysis with a discussion of Tennessee law and the FAA. Tennessee prohibits the arbitration of fraudulent inducement claims. *Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 n.10 (Tenn. 1999) (citing *City of Blaine v. John Coleman Hayes & Assocs., Inc.*, 818 S.W.2d 33, 38 (Tenn. Ct. App. 1991) (holding that the issue of fraudulent inducement cannot be submitted to arbitration under the Tennessee Uniform Arbitration Act, Tenn. Code Ann. §§ 29-5-301 to -320)); *see also Whisenant v. Bill Heard Chevrolet, Inc.*, No. W2004-01745-COA-R3-CV, 2005 WL 1629991, at *5 (Tenn. Ct. App. July 12, 2005) (stating that "where the parties have agreed that Tennessee law governs a transaction, the issue of fraudulent inducement must be excluded from arbitration"). However, under the FAA, claims for fraudulent inducement are to be submitted to an arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-05 (1967); *see also Taylor v. Butler*, 142 S.W.3d 277, 282-83 (Tenn. 2004) (noting "the long history in the federal courts of allowing arbitration of fraudulent inducement claims under the FAA, even though Tennessee law prohibits the arbitration of such claims" (citations omitted)).

---

[4] It is unclear to which of the two alleged emails DAI refers.

[5] In its verified complaint for injunctive relief, Healthmart requested the "[e]ntry of a declaratory ruling that Defendant's actions wrongfully induced Healthmart to enter into the Consulting Contract."

The contract between DAI and Healthmart does not state that arbitration shall be governed by the FAA or that the laws of any state are controlling. However, the FAA ensures the enforcement of an arbitration agreement in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. So we must first decide whether this contract is one "evidencing a transaction involving commerce." *See Frizzell*, 9 S.W.3d at 82. In the present case, we have a Connecticut corporation soliciting business in Tennessee. Therefore, this contract is one that "involves commerce."[6]

We must now determine the proper application of the FAA to this arbitration provision. "When a contract is controlled by the FAA and contains a broad arbitration clause, claims of fraudulent inducement are subject to arbitration." *Taylor*, 142 S.W.3d at 282. "[T]he FAA applies to ensure that the arbitration agreement between the parties is enforced according to its terms." *Frizzell*, 9 S.W.3d at 83-84. The question then is "what the contract has to say about the arbitrability of [Healthmart's] claim." *Id.* at 84 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 (1995). We are instructed as follows:

> If the parties in this case agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law, the claim must be submitted to arbitration. Conversely, if the parties did not agree to arbitrate the claim of fraudulent inducement, then they can not be compelled to arbitrate the claim despite its arbitrability under the FAA.

*Id.* (footnotes omitted). In this case, the arbitration clause purports to govern "any dispute arising out of or relating to this contract." This clause appears to evidence an intent to submit all issues to arbitration, including issues of contract formation. *See id.* at 85. We therefore conclude that the parties have indicated their intention to submit a claim of fraudulent inducement to arbitration.

Healthmart relies on *Taylor v. Butler* in arguing that an arbitrator may decide the issue of fraudulent inducement only when the arbitration provision states that it is governed by the FAA. It is true that, in *Taylor*, the arbitration provision specifically stated that the FAA was controlling. *Taylor*, 142 S.W.3d at 280. However, the FAA may also be controlling in

---

[6] The analysis for whether a contract is one "evidencing a transaction involving commerce" is embodied in Congress's power to "regulate intrastate activities that have a substantial relation to interstate commerce." *Frizzell*, 9 S.W.3d at 83. "[T]he FAA 'embodies Congress'[s] intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" *Id.* (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987)).

instances where the FAA is not identified in the contract itself.  *See Frizzell*, 9 S.W.3d at 83-84 (holding that the FAA applies because the case involves interstate commerce).[7]

We conclude that because the contract does not state that Tennessee law is governing and does evidence "a transaction involving commerce," the FAA applies and Healthmart's claim of fraudulent inducement of the contract may be arbitrated.

CONCLUSION

The judgment of the trial court is reversed and remanded.  Costs of appeal are assessed against the appellees, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[7] Because the contract in *Frizzell* also contained a provision stating that the laws of Tennessee would govern, the court ultimately declined to compel arbitration of the petitioner's claim for fraudulent inducement.  *Id.* at 85.  No such provision exists in the present case.